Matos, como Presidente del Partido "Unionistas de Ponce," Peticionario y Apelado, *v.* Siaca, Secretario Interino de Puerto Rico, Demandado y Apelante.

Apelación procedente de la Corte de Distrito de San Juan, Sección 1ª., en un caso de *mandamus.*

No. 1197.—Resuelto en sesión extraordinaria en octubre 9, 1914.

Elecciones—Papeletas Electorales—Divisa.—De acuerdo con la ley, los partidos políticos organizados y que puedan organizarse en esta isla, deben usar una divisa en la papeleta electoral que identifique y distinga de las otras su propia candidatura.

Id.—Papeletas Electorales—Divisas Prohibidas.—El escoger la divisa es función propia de cada partido, prohibiendo sólo expresamente la ley que se empleen como tal la bandera de los Estados Unidos, el escudo de Puerto Rico, el de los Estados Unidos, o alguna que a juicio del Secretario de Puerto Rico se asemeje demasiado a la que haya adoptado cualquier otro partido.

Id.—Unionistas de Ponce—Divisa Adoptada.—La divisa presentada al Secretario de Puerto Rico por el Partido "Unionistas de Ponce" y que es objeto

de este litigio, no está comprendida dentro de las expresas prohibiciones de la Ley Electoral.

ID.—INTERPRETACIÓN DE LEYES ELECTORALES—DESEO DEL LEGISLADOR—EXPRESIÓN DE LA VOLUNTAD DE LA MAYORÍA.—En la interpretación de leyes regulando elecciones, debe tenerse presente el deseo del legislador que es la suprema ley bajo la constitución y el dar efecto a la voluntad expresa de la mayoría haciendo que cada elector pueda emitir su voto de acuerdo con los dictados de su propia conciencia.

ID.—POLÍTICA PÚBLICA—CÓMO DEBE DETERMINARSE.—La política pública de un Estado o Nación debe determinarse por su constitución, sus leyes y sus resoluciones judiciales, y no por las diferentes opiniones de legos, abogados o jueces con respecto a las exigencias o intereses del público.

ID.—POLÍTICA PÚBLICA DE PUERTO RICO CON RESPECTO AL NÚMERO DE EMBLEMAS COMUNES A TODO EL PUEBLO EN LAS DIVISAS ELECTORALES—''BANDERA DE PUERTO RICO.''—Examinada la historia de la vigente ley sobre la materia y deducida de ella con toda claridad la línea de conducta trazada por el legislador, no estando comprendida la llamada ''Bandera de Puerto Rico'' dentro de los emblemas comunes a todo el pueblo especificados en la misma, se resolvió, sin entrar a considerar si en realidad de verdad la dicha bandera podía o no calificarse de tal modo, que el Secretario de Puerto Rico no estaba autorizado por la ley para negarse a inscribirla en las papeletas electorales como parte de la divisa escogida por el Partido ''Unionistas de Ponce.''

Los hechos están expresados en la opinión.

Abogado del apelado: *Sr. Cay. Coll Cuchí.*

Abogado del apelante: *Sr. Howard L. Kern, Attorney General Interino.*

EL JUEZ ASOCIADO SR. DEL TORO, emitió la opinión del tribunal.

El presente es un recurso de apelación interpuesto contra una sentencia de la Corte de Distrito de San Juan, Sección 1ª., dictada en un caso de *mandamus.*

En su solicitud alegó el peticionario lo que sigue:

''1°. Que el partido 'Unionistas de Ponce'' es una agrupación política, debidamente inscrita en el Departamento del Secretario de Puerto Rico con arreglo a la Ley Electoral, la cual ha presentado en dicho departamento una candidatura municipal para los cargos de alcalde, concejales y miembros de la Junta Escolar de Ponce en las elecciones que han de celebrarse en el mes de noviembre próximo.

''2°. Que cumpliendo con los preceptos de la Ley Electoral, el partido 'Unionistas de Ponce,' al archivar su petición en el Departamento de Estado de Puerto Rico para quedar constituído como un partido político con capacidad jurídica ante el Gobierno Insular,

presentó junto con su lista de candidatos la correspondiente divisa que ha de estamparse a la cabeza de su candidatura en la papeleta oficial donde constan todas las candidaturas que luchen en las próximas elecciones.

"3°. Que dicha divisa consiste en dos manos cerradas sosteniendo un asta con una bandera de cinco franjas y un triángulo con una estrella, llevando en la parte superior del asta una cruz; todo según está más gráficamente representado en el dibujo que se acompaña y hace parte de esta petición.

"4°. Que tanto la inscripción del partido como su candidatura han sido aceptadas por el Departamento del Secretario de Puerto Rico; pero la divisa anteriormente descrita ha sido rechazada sin causa ni motivo alguno porque según el Secretario de Puerto Rico, 'contiene la bandera que se llama bandera de Puerto Rico, el propósito de la cual es representar no a una parte del pueblo, sino a todo el pueblo.'

"5°. Que según la Ley Electoral ningún partido político podrá usar como emblema la bandera nacional ni el escudo de armas de Puerto Rico; y el Secretario de Puerto Rico está autorizado para rechazar cualquier divisa que en su opinión es muy parecida a la ya adoptada por otro partido político.

"6°. Que ni dentro del espíritu ni dentro de la letra de la sección 35 de la Ley Electoral puede ser rechazada la divisa ofrecida en cuanto a la bandera indicada, la cual ni es la bandera nacional, ni representa el escudo nacional ni de Puerto Rico, ni es la bandera de parte del pueblo ni la bandera de todo el pueblo, sino simplemente una enseña sin significación política de ninguna clase, excepto la que pueda proporcionarle temporalmente su adopción como divisa por el partido 'Unionistas de Ponce.'

"7°. Que según la Ley Electoral el Secretario de Puerto Rico solamente puede rechazar una divisa cuando se parezca a otra ya adoptada por otro partido político, o cuando contenga la bandera nacional o el escudo de Puerto Rico, siendo esa negativa a inscribirse la divisa a que nos venimos refiriendo ilegal e injustificada, estando por el contrario como está obligado a su aceptación por los términos imperativos de la ley."

Archivada la solicitud, la Corte de Distrito dictó una orden señalando día para que la parte demandada compareciera a exponer las razones que tuviera para la no expedición del

auto de *mandamus*.  La parte demandada compareció en efecto y expuso en su contestación las que siguen:

"1°. En cuanto a lo consignado en el párrafo primero de la petición, esta parte dice: que allá en uno de los días del mes de agosto del corriente año, el peticionario presentó en la Secretaría de Puerto Rico una solicitud en la que se hacía constar la formación de un partido político en la ciudad de Ponce bajo la denominación de 'Unionistas de Ponce,' así como los candidatos de dicha agrupación en las próximas elecciones para los cargos de alcalde, concejales y miembros de la junta escolar de Ponce.  Que sometió asimismo la divisa que había de utilizar el citado partido, la que está formada por dos (2) manos cerradas que sostienen un asta con una bandera y una cruz.

"2°. Esta parte admite lo consignado en el hecho 2°. de la solicitud de *mandamus*.

"3°. En cuanto al hecho 3°. de la petición, esta parte alega que la divisa sometida por el partido 'Unionistas de Ponce,' está descrita en la petición del modo siguiente: 'Hacemos constar que el nombre del factor político o partido que representamos es el de "Unionistas de Ponce" y constituye su divisa electoral dos manos sosteniendo la bandera que llamamos de Puerto Rico, en cuya asta aparece una cruz en su parte superior, según el diseño al margen.'

"Se acompañan certificaciones de dicha petición y divisa y se hacen parte de esta contestación.

"4°. En contestación al hecho 4°. de la petición, el compareciente alega que archivó en la Secretaría de Puerto Rico la candidatura sometida por el partido 'Unionistas de Ponce,' pero no así la divisa, puesto que la misma está formada por una bandera que en la solicitud de dicho partido sometida a la Secretaría de Puerto Rico, se dice que es la que llamamos bandera de Puerto Rico.'

"Esta parte sostiene que la citada divisa está en contra de la moral pública y en pugna con el interés y bienestar de los ciudadanos de Puerto Rico, puesto que el propósito de la misma es representar no a una parte del electorado, sino a todo el electorado, y no a una parte del pueblo, sino a todo el pueblo.

"Por tal motivo el compareciente, teniendo como tiene poder discrecional de hacerlo, se negó a aceptar el emblema a que se ha hecho referencia, según se desprende de la carta enviada al peticionario, y que se hace parte de esta contestación.

"5°. Se admite el hecho 5°. de la solicitud.

"6°. Contestando al párrafo 6°. de la petición, el demandado alega:

que admite que la bandera a que se viene haciendo referencia ni es la bandera nacional ni representa el escudo nacional o de Puerto Rico, pero niega que la misma está desprovista de toda significación.

"Alega el demandado que, de acuerdo con el espíritu de la Ley Electoral, el Secretario de Puerto Rico tiene poder discrecional para rechazar cualquier divisa de partido que esté en contra del interés y bienestar público, y esta parte sostiene que el emblema sometido por el partido 'Unionistas de Ponce' está en contra del interés público por la razón de que dicho emblema tiene la bandera que los mismos peticionarios llaman 'de Puerto Rico,' seguramente porque saben que así la llama una gran parte del pueblo, aunque no está aceptada por ningún decreto legislativo ni es bandera oficial de Puerto Rico.

"Alega esta parte que de los términos en que aparece redactada la solicitud presentada por el partido 'Unionistas de Ponce' al Secretario de Puerto Rico para conseguir el archivo de dicha solicitud y la aceptación de la divisa a que se ha hecho referencia en el párrafo 1º. de esta contestación, se desprende que el citado partido optó por tal divisa con el propósito de que la misma represente no a una parte del pueblo, sino a todo el pueblo.

"Sostiene el demandado que la divisa sometida por el partido 'Unionistas de Ponce' puede ser considerada como un emblema común, cosa que traería como consecuencia que en la emisión del voto, fuera defraudado o engañado el elector iliterato, para cuya guía se insertan las divisas en las papeletas electorales.

"7º. En cuanto a lo consignado en el párrafo 7º. de la solicitud de *mandamus,* el compareciente alega y dice: que los motivos en que puede basarse el Secretario de Puerto Rico para rechazar cualquier divisa sometida por una agrupación o partido político no son solamente aquellos que se mencionan específicamente en la sección 35 de la Ley Electoral. El Secretario de Puerto Rico tiene poder discrecional para rechazar cualquier emblema o divisa sometida por una partida político, siempre que tal emblema o divisa esté en contra del espíritu de la Ley Electoral y en pugna con el bienestar e interés público.

"Alega el demandado que, de acuerdo con el espíritu de la Ley Electoral, no estaba ni está en la obligación de aceptar la divisa a que se ha hecho referencia en el primer párrafo de esta petición, y, por tanto, niega que al rechazar la citada divisa a que se ha hecho referencia, cometiera el demandado una acción ilegal o injustificada."

Celebrada la vista, la corte de distrito consideró el caso

y basándose en una opinión escrita, dictó sentencia decretando la expedición de un auto perentorio de *mandamus* contra el Secretario de Puerto Rico, ordenándole la inscripción de la divisa adoptada por el Partido "Unionistas de Ponce," en las papeletas electorales. Luego dicha sentencia fué enmendada para conformarla con las minutas de la corte, de manera que su parte dispositiva expresara que el auto debía dirigirse contra el Secretario "para que admita y registre en los récords de sus oficinas a los fines de la Ley Electoral, la divisa presentada por el partido 'Unionistas de Ponce.' "

La cuestión a decidir, es, pues, a virtud de la apelación interpuesta por el demandado, la de si debe revocarse o confirmarse la sentencia apelada que resolvió que el Secretario de Puerto Rico tenía la obligación de admitir y registrar la divisa que escogiera y le presentara el partido político "Unionistas de Ponce." Después de un detenido estudio, opinamos que debe confirmarse la sentencia apelada.

Las papeletas electorales, dice la *Cyclopedia of American Government,* volumen 1, página 652, se imprimen por la autoridad pública a expensas del tesoro público y el sistema australiano, o sea el de la votación secreta, está en fuerza en todos los Estados Unidos, con excepción de Georgia y la Carolina del Sur. Existen varias formas de papeletas dentro del sistema australiano. Primero, la llamada papeleta de Massachusetts, en la cual los nombres de todos los candidatos están agrupados siguiendo el orden alfabético, bajo el título de los diferentes cargos, de manera que el votante debe indicar cada candidato por quien vota. Segundo, la conocida por papeleta de columna (*party column ballot*), que permite al votante votar una candidatura separada haciendo una sola cruz en un círculo. Las otras formas de papeletas usadas en los Estados Unidos, son meras modificaciones del primero o de ambos de los modelos descritos.

La misma obra, Volumen II, página 622, al tratar del ''círculo del partido,'' se expresa así:

''La forma más popular de la papeleta electoral australiana es el tipo de columna. En esta papeleta se distribuyen los nombres de todos los candidatos de cada partido, poniéndose a los candidatos para iguales cargos en la misma línea horizontal en cada columna. En la parte superior de la columna se encuentra el círculo del partido que puede ser identificado por algún emblema del partido como también imprimiéndose el nombre sobre el mismo. El Partido Republicano generalmente emplea un águila; el Democrático, un gallo, y el Progresista Nacional, la cabeza de un ciervo, si bien el emblema varía en diferentes Estados. Entre los partidos secundarios por lo general aparece una variedad mayor. La impresión del círculo del partido proporciona un aliciente directo para votar 'toda la papeleta,' puesto que la marca que se haga en este espacio indica que se vota toda la columna. Aunque el esfuerzo necesario para 'votar parte de la candidatura' varía grandemente, dicho esfuerzo es siempre mayor que el que se requiere para 'votar toda la papeleta.' El Sr. Allen ha demostrado en su artículo sobre 'Leyes referentes a papeletas electorales' que cuando es fácil votar 'parte de la candidatura,' se demuestra dos veces mayor habilidad a veces diez, que para votar 'toda la candidatura.' Para el analfabeta es indispensable el círculo del partido. En Denver una corpulenta irlandesa una vez tocó a una mujer que se encontraba en la caseta próxima diciéndole al oído: 'Yo soy demócrata. ¿Debo poner mi marca sobre el gallo?' ''

En Puerto Rico está también en vigor el sistema australiano y las elecciones se regulan por una ley aprobada en 1906, que ha sufrido luego diferentes modificaciones. La parte pertinente de dicha ley, a los efectos de este caso, está comprendida en su sección 35, que, tal como fué enmendada en 1908, dice así:

''Ningún partido empleará como divisa en la papeleta electoral la bandera nacional, el escudo de Puerto Rico o el de los Estados Unidos. No se empleará ninguna divisa que, a juicio del Secretario se asemeje demasiado a la que haya adoptado cualquier otro partido.

''Si un partido dejare de designar su divisa antes de la fecha en que el Secretario de Puerto Rico certificare los candidatos al Con-

sejo Ejecutivo, dicho Secretario asignará una divisa a dicho partido
para distinguirlo en las papeletas electorales oficiales.''

De acuerdo con la ley, los partidos políticos organiza-
dos y que puedan organizarse en esta isla, deben usar una
divisa en la papeleta electoral que identifique y distinga de
las otras su propia candidatura. El escoger la divisa es
función propia de cada partido, prohibiendo sólo expresa-
mente la ley que se empleen como tal la bandera de los Esta-
dos Unidos, el escudo de Puerto Rico, el de los Estados Uni-
dos, o alguna que a juicio del Secretario de Puerto Rico
se asemeje demasiado a la que haya adoptado cualquier otro
partido.

Dentro de las expresas prohibiciones de la ley, no está,
pues, comprendida la divisa presentada al Secretario de
Puerto Rico por el Partido ''Unionistas de Ponce.'' Esta
conclusión es tan clara que el mismo demandado la acepta.
Sin embargo, como hemos visto, el demandado en su con-
testación ''sostiene que la citada divisa está en contra de
la moral pública y en pugna con el interés y bienestar de
los ciudadanos de Puerto Rico, puesto que el propósito de
la misma es representar no a una parte del electorado, sino
a todo el electorado, y no a una parte del pueblo, sino a todo
el pueblo.'' Y sostiene, además, que habiendo ejercitado
la facultad discrecional que alega que tiene para juzgar y
decidir que la divisa presentada es contraria al interés y
bienestar del público, su decisión no puede ser alterada por
la corte dentro de un procedimiento de *mandamus*.

En el caso de *Solá* v. *Carrel et al*, 16 D. P. R., 706, 708,
este tribunal hizo la siguiente cita tomada de 15 Cyc., 310:

''En la interpretación de estatutos regulando elecciones, es impor-
tante tener siempre presente estos dos principios bien establecidos:
1°. El deseo del legislador es la suprema ley bajo la Constitución,
y la Legislatura puede prescribir los métodos que deben seguirse
en la dirección de las elecciones y proveer que tales métodos y no
otros deban observarse exclusivamente; y 2°. Puesto que la con-
sideración primordial del Estado es dar efecto a la voluntad expresa

de la mayoría, está directamente interesado en que cada elector dé su voto de acuerdo con los dictados de su propia conciencia.''

Veamos cuál fué la intención del legislador en este caso. En los Estatutos Revisados de Puerto Rico de 1902, sección 251 de los estatutos y 22 de la Ley Electoral, aparece entre otras prescripciones, las que siguen: ''La divisa puede ser el diseño de una estrella, un águila o algún símbolo adecuado; pero no se usará como tal divisa ni el escudo de armas ni el sello de Puerto Rico, o de los Estados Unidos, ni la bandera nacional, ni ningún otro emblema común al pueblo en general.'' Más tarde, en 1906, el legislador decretó una nueva ley electoral y por la sección 35 de la misma se limitó a disponer que: ''Ningún partido empleará como divisa en la papeleta electoral la bandera nacional, el escudo de Puerto Rico o el de los Estados Unidos.'' La prohibición del uso de ''ningún otro emblema común al pueblo en general,'' quedó omitida. Por último, el propio legislador, en 1908, volvió otra vez a ocuparse de la materia de divisa y enmendó la sección 35 adicionando la prohibición de emplear divisas que, a juicio del Secretario de Puerto Rico, se asemejaran demasiado a cualquier otra que hubiera sido adoptada por algún partido, y nada expresamente dijo con respecto al uso de emblemas comunes al pueblo en general.

En el caso de *Enders* v. *Enders,* 164 Pennsylvania State, 266, reportado en 44 A. S. R., 598, se dice: ''La política pública en la administración de la ley por los tribunales, es distinta de la que puede ser la de la legislatura. En lo que respecta a la Legislatura, puede ser y a menudo no es otra cosa sino una simple cuestión de conveniencia. La política pública que inspira la promulgación de las leyes, está determinada por la sabiduría de la Legislatura.''

Y en los casos de *Hartford Fire Insurance Co.* v. *Chicago, M. & St. P. R. Co.* (U. S.), 70 Fed., 201, 202; 30 L. R. A., 193; y *United States* v. *Trans-Missouri Freight Association* (U. S.), 58 Fed., 58, 59; 24 L. R. A., 73, citados en 6 *Words*

*and Phrases Judicially Defined,* 5814, se establece la doc-
trina de que "la política pública de un Estado o Nación debe
determinarse por su constitución, sus leyes y sus resolu-
ciones judiciales, y no por las diferentes opiniones de legos,
abogados o jueces con respecto a las exigencias o intereses
del público."

La política pública de Puerto Rico en lo que se refiere
al uso en las divisas electorales de emblemas comunes al
pueblo en general, quedó, a nuestro, juicio, teniendo en
cuenta la anterior doctrina y la historia de la ley, terminante-
mente fijada por el poder que tenía la facultad de hacerlo:
el legislativo.　El legislador portorriqueño comenzó por
especificar ciertos emblemas comunes a todo el pueblo, pero
estimando que pudieran existir otros de la misma índole que
hubieran escapado a su previsión, decretó la prohibición
general del uso de emblemas comunes a todo el pueblo.
Luego suprimió la cláusula general y circunscribió su pro-
hibición al uso de los emblemas expresamente consignados,
y al actuar así lo hizo con plenas facultades y, en tal virtud,
la línea de conducta por él trazada es la que debe prevale-
cer.　Aceptar la teoría sustentada por el demandado, equi-
valdría a sancionar el restablecimiento de la ley de 1902,
o sea a reconocer en un funcionario del poder ejecutivo la
facultad que solo tiene el poder legislativo en nuestro sis-
tema de gobierno, y a sustituir nuestro juicio por el de la
Legislatura.

La cuestión en controversia en este caso está limitada
a la objeción hecha por el Secretario de Puerto Rico al uso
de la bandera que aparece en la divisa que le presentara
el partido "Unionistas de Ponce," bajo la base de que dicha
bandera se intentaba usar no como el emblema de una parte
del pueblo, sino de todo el pueblo.　Siendo esto así y ha-
biendo llegado a la conclusión de que el uso de dicha bandera
ni está prohibido expresamente en la ley, ni es contrario a
la política pública de Puerto Rico fijada por el mismo legis-
lador portorriqueño, no es necesario entrar a considerar

y a resolver si el Secretario de Puerto Rico tiene o nó facultad discrecional de acuerdo con la ley para negarse a registrar divisas manifiestamente inmorales o contrarias abiertamente al bienestar público. Sólo diremos que si tal clase de divisas se presentaran al Secretario y éste se negara a registrarlas y sus presentantes acudieran a las cortes en demanda de auxilio por medio de procedimientos de *mandamus*, las cortes, en el ejercicio de su poder discrecional, se negarían seguramente a prestarles dicho auxilio. 23 Cyc., 146 y casos citados.

Debe confirmarse la sentencia apelada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Asociados Aldrey y Hutchison.

Los Jueces Sres. Presidente Hernández y Asociado Wolf no formaron parte del tribunal en la vista de este caso.