RE-86-166                                                                    1

En el Tribunal Supremo de Puerto Rico

| EMILIO DORANTE, ET EL.<br>    Demandante-Recurrente<br><br>    .V<br><br>WRANGLER OF P.R., ET AL.<br><br>    Demandados-recurridos | Revisión<br><br>TSPR98-50 |
| --- | --- |

Número del Caso: Re-86-166

Abogados Parte Demandant-recurrente: Lic. Jorge L. Rivero Vergne
(Moreda, Moreda & Arrillaga)

Abogados Parte Demandada-recurrida: Lic. Rossell Barrios Amy
(McConnell Valdés Kelley Sifre Griggs & Ruiz Suria

Abogados Parte Interventora:

Tribunal de Instancia: Superior, Sala de San Juan

Juez del Tribunal de Primera Instancia: Hon. María M. Pérez de Chaar

Tribunal de circuito de Apelaciones:

Juez Ponente:

Fecha: 4/27/1998

Materia:


        Este documento constituye un documento oficial del Tribunal
        Supremo que está sujeto a los cambios y correciones del
        proceso de compilación y publicación oficial de las
        decisiones del Tribunal. Su distribución electrónica se hace
        como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Emilio Dorante, et al.

    Recurrentes

       v.                          RE-86-166

Wrangler of P.R., et al.

    Recurridos

Opinión del Tribunal emitida por la Juez Asociada señora NAVEIRA DE RODON

San Juan, Puerto Rico a 27 de abril de 1998

I

Emilio Dorante, su esposa Maritza Mercado de Dorante y la sociedad de gananciales compuesta por ambos, presentaron una demanda contra Wrangler of Puerto Rico, Division of Blue Bell, Inc. (Wrangler). Alegaron que el codemandante Dorante trabajó para Wrangler por espacio de cuatro (4) años y que al momento de su despido ocupaba el cargo de Supervisor de Ventas. Continuaron expresando que éste fue despedido por haber declarado a favor de un ex empleado de Wrangler en un caso por despido discriminatorio por razón de edad. El testimonio fue prestado ante el Tribunal de Distrito Federal para el Distrito de Puerto Rico, en el caso <u>Gordils</u> v. <u>Blue Bell, Inc.</u>, Civil Número 83-1598. Adujeron, además, que esta conducta por parte del patrono Wrangler es

contraria a la ley y a la política pública del Estado que requiere que todo ciudadano diga la verdad, especialmente cuando de procedimientos judiciales se trata. Sostuvieron que se configuró un acto torticero que constituye una excepción a la exclusividad de remedio de la Ley sobre Despidos Injustificados, Ley Núm. 80 de 30 de junio de 1976, según enmendada, 29 L.P.R.A. secs. 185 et seq. (Ley Núm. 80). Reclamaron daños por pérdida económica, sufrimientos y angustias mentales.[1]

Wrangler presentó una moción de desestimación parcial solicitando la desestimación de la reclamación de daños y perjuicios. La parte demandante se opuso. El tribunal de instancia dictó una sentencia parcial desestimando las causas de acción de daños, tanto bajo la Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. sec. 146 et seq. , (Ley Núm. 100) como bajo el Artículo 1802 del Código Civil, 31 L.P.R.A. sec. 5141. Determinó que la conducta del patrono constituía un despido injustificado bajo la Ley Núm. 80 y, por lo tanto, el único que tenía derecho a un remedio, el exclusivo que establece dicha ley, era el codemandante Dorante.

En cuanto a la Ley Núm. 100, el tribunal entendió que ésta no era aplicable a la situación fáctica del caso. La parte demandante solicitó reconsideración aduciendo que las alegaciones de la demanda debían analizarse a la luz de las disposiciones de la Ley Núm. 96 de 26 de junio de 1956, según enmendada, 29 L.P.R.A. sec. 245W (Ley Núm. 96), no de la Ley Núm. 80. Esta moción fue denegada.[2]

Inconforme con la actuación del foro de instancia, la parte demandante presentó oportunamente un recurso de revisión. Planteó como único error el siguiente:

> El Honorable Tribunal de Instancia erró al desestimar las acciones en daños y perjuicios de la parte demandante-recurrente amparándose en el remedio exclusivo de la Ley Número

---

[1]    Alegaron, además, que Wrangler les adeudaba "sustanciales sumas de dinero producto de comisiones ganadas y no pagadas" y que para determinar la cuantía se requería una auditoría.

[2]    El tribunal denegó la reconsideración por haberse presentado fuera del término jurisdiccional que establece la Regla 47 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

80 de 30 de mayo de 1976 (29 L.P.R.A. Sec. 185 et seq.) ya que la Sección 24 de la Ley Número 96 de 26 de junio de 1956 (29 L.P.R.A. Sección 245W) provee una acción en daños para todo empleado que haya sido despedido por haber prestado testimonio o se disponga a ofrecerlo, en cualquier procedimiento, ya se (sic) administrativo o judicial, que se lleve a cabo en relación con la aplicación de cualquier ley laboral.

Decidimos revisar y expedimos el recurso.


II


Al analizar el error planteado tenemos que tomar en consideración varias normas procesales. Estamos ante la concesión de una moción de desestimación mediante la cual el foro de instancia dictó sentencia parcial desestimando varias causas de acción. Por lo tanto, para resolver dicha moción, el foro de instancia tenía que tomar como ciertas todas las alegaciones bien hechas en la demanda. Rivera Flores v. Cia. ABC, Op. de 15 de febrero de 1995, 138 D.P.R. __ (1995), 95 JTS 22; Ramos Lozada v. Orientalist Rattan Furn., Inc., Op. De 15 de junio de 1992, 131 D.P.R. __ (1992), 92 JTS 74; González Camacho v. Santa Cruz, 124 D.P.R. 396 (1989); Granados v. Rodríguez Estrada I, 124 D.P.R. 1 (1989); Ramos v. Marrero, 116 D.P.R. 357, 369 (1985); First Federal Savings v. Asoc. de Condómines, 114 D.P.R. 426 (1983).

De otra parte, hay que considerar que la demanda sólo tiene que contener "una relación sucinta y sencilla de la reclamación demostrativa de que el peticionario tiene derecho a un remedio." Regla 6.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Las alegaciones sólo tienen el propósito de notificar, a grandes rasgos, a la parte demandada, de las reclamaciones en su contra, para que pueda comparecer a defenderse si así lo desea. Reyes v. Cantera Ramos, Inc., Op. de 24 de febrero de 1996, 139 D.P.R. __ (1996), 96 JTS 9; Rivera Flores v. Cia. ABC, supra; Bco. Central Corp. v. Capitol Plaza, Inc., Op. de 13 de abril de 1994, 135 D.P.R.___(1994), 94 JTS 57; Mercado Cintrón v. Zeta Communications Inc., Op. de 7 de abril de 1994, 135 D.P.R.___(1994), 94 JTS 50; Ortiz Díaz v. R & R Motors Sales Corp., Op. de 28 de octubre de 1992, 131

D.P.R.___(1992), 92 JTS 140; Moa v. ELA, 100 D.P.R. 573 (1982). Al entender en una moción de desestimación las alegaciones en una demanda hay que interpretarlas conjuntamente y liberalmente a favor del promovido. Unicamente se desestimará la demanda si se demuestra que el demandante no tiene derecho a remedio alguno bajo cualesquiera hechos que pueda probar. Moa v. ELA, supra; Cía. de Desarrollo Comer. v. American Fruits, 104 D.P.R. 90 (1975); Candal v. CT Radiology Office, Inc., 112 D.P.R. 227, 231 (1982). Cabe señalar además, que "no procede la desestimación definitiva de una demanda por dejar de exponer la misma hechos que justifiquen la concesión de un remedio si dicha demanda es susceptible de ser enmendada." Clemente v. Depto. de la Vivienda, 114 D.P.R. 763, 771 (1983).

Respecto a la súplica en una demanda, hemos interpretado que ésta no forma parte de la demanda, aunque sirve y ayuda a interpretarla. Ortiz Díaz v. R&R Motors Sales Corp., supra; Moa v. ELA, supra; Rivera v. Otero de Jové, 99 D.P.R. 189 (1970). También hemos resuelto que en la demanda "no hay que especificar bajo qué disposición legal se reclama, basta con que de los hechos que esquemáticamente se alegan surja una causa de acción bajo cualquier ley." Después de todo, los tribunales conceden lo que en derecho procede no lo que se les pide, independientemente de que el remedio hubiese sido específicamente solicitado en la súplica o en las alegaciones. Rivera Flores v. Cía. ABC, supra; Neca Mortg. Corp. V. A&W Dev. S.E., Op. de 7 de febrero de 1995, 137 D.P.R.___(1995), 95 JTS 10. "Son los hechos alegados y no el título o súplica de la demanda lo que constituye la base determinante de la existencia de una causa de acción. Granados Navedo v. Rodríguez Estrada I, supra, págs. 48-49;" Cuevas Segarra, José, Práctica Procesal Puertorriqueña, Procedimiento Civil, Cap. X, pág. 453; Regla 70 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Véanse, además: Neca Mortg. Corp. v. A & W Dev. S.E., supra; Rivera Flores v. Cia. ABC, supra.

III

A la luz de las normas procesales antes expuestas y las alegaciones hechas en la demanda, no cabe duda que los demandantes esbozaron reclamaciones al amparo de la Ley Núm. 96 y del Artículo 1802 del Código Civil. Comenzaremos analizando la posible aplicación de la Ley Núm. 96 al codemandante Dorante, tomando en consideración las alegaciones del recurrido Wrangler.

En primer lugar, Wrangler alega que la Ley Núm. 96 no le aplica al codemandante Dorante, porque la prohibición contra represalia de la Sección 21 sólo es extensiva a leyes laborales relativas a reclamaciones de salario y no a "cualquier otra ley laboral", como expresa el texto de la propia Ley.    Además, señala que la reciente aprobación de disposiciones contra la represalia en otras leyes laborales evidencia la corrección de su interpretación sobre el alcance de la Sección 21. Finalmente, y en la alternativa, sostiene que si "la frase 'o cualquier ley laboral' significa que todas las leyes laborales de Puerto Rico tienen una disposición que penaliza la represalia patronal por testificar en un procedimiento bajo dichas leyes, ésta [la Sección 21 de la Ley Núm. 96] sería inconstitucional a la luz de la Sección 17 del Artículo III de la Constitución de Puerto Rico".    Examinaremos por separado estos planteamientos.

A

El recurrido Wrangler nos insta a que concluyamos que la Sección 21 de la Ley Núm. 96 sólo es extensiva a leyes laborales relativas a reclamaciones de salario, no a "cualquier otra ley laboral". La antedicha sección,[3] en lo pertinente, dispone:

---

3    Citamos el texto oficial de la Ley según aparece en Leyes de Puerto Rico (1964), pág. 346, porque existe cierta divergencia en el texto según éste aparece en la compilación de las Leyes de Puerto Rico Anotadas (29 L.P.R.A. sec. 245w).

Todo patrono que despida, suspenda, rehúse admitir o restituir, reduzca el salario, rebaje en categoría, aumente las horas de labor o imponga otras condiciones de trabajo más onerosas a un empleado o ex empleado suyo, discrimine en cualquier forma o amenace cometer contra él cualquiera de esos actos para evadir el cumplimiento de esta ley <u>o de cualquier otra ley laboral</u> o reglamento promulgado al amparo de la misma o de cualquier decreto u orden de la Junta porque dicho empleado o ex empleado se haya querellado, haya ofrecido o prestado testimonio o se disponga a ofrecerlo o prestarlo, en alguna investigación, querella, reclamación, audiencia o procedimiento administrativo o judicial que se lleve o haya llevado a cabo en relación con la aplicación de esta ley <u>o de cualquier otra ley laboral</u> o reglamento promulgado al amparo de la misma o de cualquier decreto, orden, reglamento, resolución o acuerdo de la Junta, o porque haya servido, sirva o se proponga servir como miembro de un Comité de Salario Mínimo, incurrirá en un delito menos grave, y una vez convicto, se le impondrá una multa de cien (100) a mil (1,000) dólares o cárcel por término de un (1) mes a seis (6) meses, o ambas penas a discreción del tribunal.

. . . .

(c) El patrono deberá reponer en su empleo al trabajador y cesar en la continuación del acto de que se trate. Para obligarlo a cumplir esa obligación, tendrá competencia el Tribunal de Primera Instancia, mediante procedimientos sencillos, rápidos y preferentes, en los que se dará oportunidad de ser oídas a las partes interesadas. <u>En dichos procedimientos se investigarán también los daños que el acto haya causado al empleado o ex empleado, a cuyo favor se dictará sentencia por el doble del importe de los daños causados, además de concedérsele costas y una suma razonable, que nunca bajará de cincuenta (50) dólares, para honorarios de abogado.</u> (Enfasis suplido.) 29 L.P.R.A. sec. 245w.

Al acometer nuestra función de interpretación de las leyes, reiteramos algunas normas de hermenéutica pertinentes.

[E]s principio cardinal de hermenéutica que '[a]l interpretar una disposición específica de una ley los tribunales deben siempre considerar cuáles fueron los propósitos perseguidos por la Asamblea Legislativa al aprobarla y nuestra determinación debe atribuirle un sentido que asegure el resultado que originalmente se quiso obtener... .' Nuestra obligación fundamental en estos casos, es imprimirle efectividad a la intención legislativa, propiciando de esta forma la realización del propósito que persigue la ley... . Al interpretar y aplicar un estatuto hay que hacerlo teniendo presente el propósito social que lo inspiró.... (Citas omitidas.) <u>Vázquez</u> v. <u>A.R.P.E.,</u> 128 D.P.R. 513, 523 (1991).[4]

---

[4]   Véase, además: <u>Ramírez Lebrón</u> v. <u>Registrador</u>, Op. de 30 de junio de 1992, 132 D.P.R. ____ (1992), 92 J.T.S. 113, págs. 9889, 9893; <u>Ind. Cortinera, Inc.</u> v. <u>P. R. Telephone Co.</u>, Op. de 4 de febrero de 1993, 132 D.P.R. ____ (1993), 93 J.T.S. 15, págs. 10369, 10373; <u>Defendini Collazo, et al.</u> v. <u>E.L.A., Cotto</u>, Op. de 15 de julio de 1993, 134 D.P.R. ____ (1993), 93 J.T.S. 119, págs. 10995, 11012.

"Una vez descubierto el deseo y voluntad del legislador, el fin de la interpretación ha sido logrado y no resulta necesario aplicar ninguna regla de hermenéutica, porque éstas no son sino una ayuda para determinar esa voluntad legislativa que se busca... . Sólo hay una regla de interpretación que es absolutamente invariable y ésta es que <u>debe descubrirse y hacerse cumplir la verdadera intención y deseo del poder legislativo</u>." (Enfasis suplido.) R.E. Bernier y J.A. Cuevas Segarra, <u>Aprobación e Intepretación de las Leyes en Puerto Rico</u>, San Juan, Publicaciones J.T.S., Inc., 2<sup>da</sup> ed., 1987, págs. 241-242. En esta búsqueda acudimos prioritariamente al texto de la ley, pues cuando éste es claro y libre de ambigüedad, no debe ser menospreciado bajo el pretexto de cumplir su espíritu. Artículo 14 del Código Civil, 31 L.P.R.A. sec. 14. Otra fuente a consultar para descubrir la intención del legislador es el historial legislativo del estatuto en cuestión. <u>Caballero</u> v. <u>Sistemas de Retiro</u>, Op. de 28 de junio de 1991, 129 D.P.R. _____ (1991); 91 JTS 78, págs. 8885, 8893. En cuanto a los estatutos de carácter reparador o remedial, como el que hoy examinamos, es norma reconocida que éstos deben ser interpretados liberalmente para lograr cumplir su propósito.[5] En el contexto de estas normas de hermenéutica pasemos a considerar la Sección 21 de la Ley Núm. 96.

_____

5     Sobre la interpretación liberal de los estatutos laborales señalamos en <u>Muñoz Hernández</u> v. <u>Policía de P.R.</u>, Op. de 8 de noviembre de 1993, 134 D.P.R. ____ (1993), 93 J.T.S. 137, págs. 11195, 11200-11201:

     La jurisprudencia ha destacado la metodología de interpretación liberal de los estatutos en el área de legislación obrera. Véase, por ejemplo, <u>J.R.T.</u> v. <u>Línea Suprema Inc.</u>, 89 D.P.R. 840, 845 (1964), sobre la Ley de Relaciones del Trabajo; <u>Sucn. Meléndez</u> v. <u>Central San Vicente</u>, 86 D.P.R. 398, 406 (1962), sobre la aplicación de nuestras leyes laborales cuando son más beneficiosas que las federales; <u>Nazario</u> v. <u>Vélez</u>, 97 D.P.R. 458, 460-461 (1969), sobre salario mínimo; <u>López Vega</u> v. <u>F. Vega Otero Inc.</u>, 103 D.P.R. 175, 177 (1974), sobre que la exclusión de un empleado de los beneficios de la legislación laboral debe ser clara y debe interpretarse restrictivamente; <u>González</u> v. <u>Adm. de Sistemas de Retiro</u>, [113 D.P.R.] pág. 293, sobre la Ley de Beneficios por Incapacidad; <u>Morales</u> v. <u>A.S.R.E.G.J.</u>, [Op. de 4 de abril de 1989, 123 D.P.R. ____ (1989), 89 J.T.S. 39] pág. 6731, sobre legislación que concede pensiones; <u>Avon Products Inc.</u> v. <u>Srio. del Trabajo</u>, 105 D.P.R. 803, 807-808 (1977), sobre la Ley de Compensaciones por Accidentes del Trabajo. Véase, también, Elfren Bernier y

El antecedente de la Ley Núm. 96 lo encontramos en la Ley Núm. 8 de 5 de abril de 1941.[6] Leyes de Puerto Rico (1941), pág. 303. Esta ley de salario mínimo disponía en su Sección 19 que todo patrono que despidiera, amenazara con despedir o de cualquier otra manera discriminara contra cualquier empleado o ex empleado porque éste se hubiera querellado u ofrecido testimonio o se dispusiera a ofrecerlo o porque creyera que el empleado o ex empleado podía ofrecer testimonio en cualquier investigación o procedimiento relacionado "con la aplicación de esta Ley", incurriría en un delito menos grave. Leyes de Puerto Rico (1941), pág. 319. El alcance de esta sección estaba claramente circunscrito a investigaciones o procedimientos relacionados, únicamente, con la Ley de Salario Mínimo. La Ley fue enmendada en varias ocasiones, pero esta sección no fue alterada.[7] La prohibición contra la represalia patronal

---

Cuevas Segarra, [Aprobación e Interpretación de las Leyes en Puerto Rico, 2da ed., San Juan, Publicaciones J.T.S., 1987, T. 1], págs. 456-459.

    Con relación a la forma de interpretar los estatutos de carácter reparador o remedial, y sobre lo que constituye una interpretación liberal, nos dice el tratadista Sutherland:

    'Remedial statutes are liberally construed to supress the evil and advance the remedy. The policy that a remedial statute should be liberally construed in order to effectuate the remedial purpose for which it was enacted is firmly established. Expressions of a rule to that effect appear over and over in judicial opinions.

                        . . . .

    What is called a liberal construction is ordinarily one which makes the statutory rule or principle apply to more things or in more situations than would be the case under a strict construction. Sutherland, Statutory Construction, 5ta ed., 1992, Vol. 3, sec. 60.01, pág. 147.'

6    Antes de ésta ya existía una ley que disponía un salario mínimo para mujeres trabajadoras. Ley Núm. 45 de 9 de junio de 1919. Leyes de Puerto Rico (1919), pág. 201. Esta no contenía una disposición sobre represalia patronal.

7    Véanse, además: Ley Núm. 1 de 12 de noviembre de 1941, Leyes de Puerto Rico (Extraordinaria, 1941), págs. 3-7; Ley Núm. 9 de 20 de marzo de 1942, Leyes de Puerto Rico (1942), págs. 301-303; Ley Núm. 44 de 23 de abril de 1942, Leyes de Puerto Rico (1942), págs. 477-483.

    Por ejemplo, en 1945 la Ley fue sustancialmente enmendada, en específico, la Sección 19 sobre represalia. A ésta se le añadió una sanción civil y una presunción a favor del empleado.

se limitaba a empleados o ex empleados que participaran o estuvieran dispuestos a participar "en alguna investigación, querella, reclamación, audiencia o procedimiento administrativo o judicial" relacionado o para la aplicación de la Ley de Salario Mínimo únicamente.

En 1956, se aprobó una nueva Ley de Salario Mínimo en Puerto Rico. Ley Núm. 96 de 26 de junio de 1956, Leyes de Puerto Rico (1956), pág. 623. Los proyectos de ley relativos a ésta recogieron esencialmente el texto de la antigua Sección 19, ahora renumerada 24 bajo el título "Discrímenes Patronales. – Penalidades.- Presunciones.- Daños". Véanse, P. de la C. 1538, Diario de Sesiones de la Asamblea Legislativa (Cámara de Representantes), San Juan, 1956, Vol. 8, Tomo 3, pág. 977; P. del S. 803, Diario de Sesiones de la Asamblea Legislativa (Cámara de Representantes), supra, págs. 1341-1342. Al aprobarse la Sección 24, ésta se mantuvo esencialmente igual a la vigente en la ley anterior; evidenciando así la intención legislativa de mantener una protección contra la represalia patronal que ocurriera en relación con la implantación de la Ley de Salario Mínimo exclusivamente.

En 1964, se presentó en la Legislatura el P. de la C. 1108, que proponía enmendar los incisos (a) de las Secciones 16 y 24 de la Ley Núm. 96. La propuesta enmienda a la Sección 24 ampliaba el ámbito de la prohibición contra la represalia "a cualquier otra ley laboral o reglamento promulgado al amparo de la misma"[8]. Este proyecto fue aprobado y así se convirtió en la Ley Núm. 105 de 26 de junio de 1964.

---

8    El texto propuesto, y posteriormente aprobado, es el siguiente:

Sección 24.- Discrímenes Patronales.- Presunciones.- Daños.

(a) Todo patrono que despida, suspenda, rehúse admitir o restituir, reduzca el salario, rebaje en categoría, aumente las horas de labor o imponga otras condiciones de trabajo más onerosas a un empleado o ex empleado suyo, discrimine en cualquier forma o amenace cometer contra él cualquiera de esos actos para evadir el cumplimiento de esta ley, o de cualquier otra ley laboral o reglamento promulgado al amparo de la misma o de cualquier decreto u orden de la Junta porque dicho empleado o ex empleado se haya querellado, haya ofrecido o prestado testimonio o se disponga a ofrecerlo o prestarlo, en

El historial legislativo de esta ley mantiene silencio en cuanto al propósito de la enmienda a la Sección 24.  En el Informe Conjunto de las Comisiones de Trabajo y Agricultura de la Cámara de Representantes sobre el P. de C. 1108, sólo se discute la enmienda a la Sección 16.  Diario de Sesiones de la Asamblea Legislativa (Cámara de Representantes), San Juan, 1964, Vol. 18 Pt. 4, pág. 1790.  Tampoco hay debate alguno, en el historial, sobre la enmienda a la susodicha sección.

Aun en ausencia de expresión legislativa sobre el propósito de la enmienda a la Sección 24, es evidente que la Legislatura pretendió con ésta ampliar considerablemente el ámbito de la protección contra represalia contenida en la Ley de Salario Mínimo.  La frase incorporada a ésta, relativa "a cualquier otra ley laboral", demuestra con certeza la intención de extender la protección más allá de los confines de la Ley de Salario Mínimo a otras leyes laborales.  Hasta este momento, los antecedentes de la Ley Núm. 96 habían demostrado una intención legislativa de circunscribir la disposición contra represalia a procedimientos relativos a la Ley de Salario Mínimo únicamente.  Al interpetar estas disposiciones señalamos que su alcance se circunscribía a la Ley de Salario Mínimo.  Limardo Costa v. Eastern Sugar Associates, 84 D.P.R. 269, 273-274 (1961); Berríos v. Eastern Sugar Associates, 85 D.P.R. 119, 125-126 (1962);  Cf. J.R.T. v. Morales, 89 D.P.R. 777, 784 (1964).

---

alguna investigación, querella, reclamación, audiencia o procedimiento administrativo o judicial que se lleve o haya llevado a cabo en relación con la aplicación de esta ley o de cualquier otra ley laboral o reglamento promulgado al amparo de la misma o de cualquier decreto, orden, reglamento, resolución o acuerdo de la Junta, o porque haya servido, sirva o se proponga servir como miembro de un Comité de Salario Mínimo, incurrirá en un delito menos grave, y una vez convicto, se le impondrá una multa de cien (100) a mil (1,000) dólares o cárcel por término de un mes (1) a seis (6) meses, o ambas penas a discreción del tribunal."  (Enfasis en el original.)  Diario de Sesiones de la Asamblea Legislativa (Cámara de Representantes), San Juan, 1964, Vol. 18, Pt. 4, pág. 1790; Leyes de Puerto Rico (1964), págs. 345-346.

En este contexto de actuaciones legislativas e interpretación judicial de las mismas, procede la Legislatura a enmendar la disposición contra represalia de la Ley, y la hace extensiva a "cualquier otra ley laboral". Wrangler nos insta a interpretar esta enmienda de manera restrictiva y limitar su alcance a leyes sobre reclamaciones de salario exclusivamente. Esta propuesta interpretación es contraria al claro texto de la Ley y a la evolución de la Ley de Salario Mínimo.

La enmienda demuestra, con meridiana claridad, una intención de extender la protección y el beneficio, hasta entonces sólo disponible bajo la Ley de Salario Mínimo, a cualquier otra ley laboral. No existe expresión alguna en la Ley Núm. 105 o su historial legislativo que fundamente o sostenga la interpretación restrictiva que propugna el recurrido. Por el contrario, el claro texto de la Ley nos señala que la actual Sección 21, antes Sección 24,[9] provee una protección contra represalia aplicable a cualquier ley laboral.[10]   Suscribir la interpretación propuesta por el recurrido constituiría un acto contrario al claro texto de la ley y en menosprecio de ella.  Artículo 14 del Código Civil, supra.  Además, violentaríamos las normas de interpretación liberal de estatutos reparadores, particularmente los laborales.

Por lo tanto, a la luz de los cambios habidos en la Sección 21 de la Ley de Salario Mínimo hasta su versión actual, su claro texto, y las normas de hermenéutica aplicables, concluimos que la antedicha sección dispone una prohibición contra la represalia, según sus propios términos, <u>para cualquier ley laboral</u>.  Un análisis de las alegaciones en la demanda, donde específicamente se expresó que el codemandante Dorante fue despedido por haber declarado a favor de un ex empleado de Wrangler en un caso de discrimen por razón de edad, nos lleva a concluir que, <u>prima</u>

---

9    En 1979 se enmendó la Sección 24 al único fin de renumerarla como Sección 21.  Ley Núm. 114 de 17 de julio de 1979, Artículo 21, Leyes de Puerto Rico (1979), págs. 281, 290.

10   Esta misma posición la sustenta el Lcdo. Ruy Delgado Zayas en sus obras sobre la Legislación Protectora del Trabajo.  R. Delgado Zayas, <u>Manual Informativo de Legislación Protectora del Trabajo en Puerto Rico</u>, San Juan, 1989, pág. 327; <u>Apuntes para el estudio de la legislación protectora del trabajo en el Derecho Laboral Puertorriqueño</u>, San Juan,

facie, la reclamación del codemandante Dorante, según expuesta en sus alegaciones, está amparada por la Sección 21 de la Ley Núm. 96, según enmendada.   Pasemos ahora a considerar el segundo planteamiento de Wrangler.

B

Wrangler aduce como otro fundamento para limitar la aplicabilidad de la Sección 21 de la Ley Núm. 96, solamente a leyes relativas a reclamaciones de salario, la actuación de la Asamblea Legislativa al aprobar prohibiciones contra la represalia en otras leyes laborales.   En particular, se refiere a la Ley Núm. 69 de 5 de julio de 1985, 29 L.P.R.A. sec. 1320 y et seq. (Ley Núm. 69) sobre discrimen por sexo; y a la discusión del P. de la C. Núm. 712 de 3 de marzo de 1986 para enmendar el Artículo 2 de la Ley Núm. 80 de 30 de mayo de 1976, 29 L.P.R.A. sec. 185a y et seq. (Ley Núm. 80).   Este último se convirtió en la Ley Núm. 65 de 3 de julio de 1986, 29 L.P.R.A. sec. 185b.   En ambas piezas legislativas se establece una causa de acción para los empleados que participaron o testificaron en procedimientos incoados bajo dichas leyes. Indica Wrangler que si existía una causa de acción general contra la represalia bajo la Ley Núm. 96, no había la necesidad de disponer lo mismo en cada ley separadamente.   Concluye, por lo tanto, que la aprobación de disposiciones que prohiben la represalia en otras leyes laborales comprueba que la Sección 21 no es aplicable a cualquier ley laboral.   No estamos de acuerdo.   La letra de dicha enmienda es clara y se puede deducir lógicamente que el legislador, al adicionar la frase "de cualquier otra ley laboral", quiso proteger a los obreros de actuaciones de sus patronos dirigidas a castigarlos por haber participado en un procedimiento administrativo o judicial relacionado con la aplicación de cualquier ley laboral.

1989, pág. 113.

Examinemos, en primer lugar, la Ley Núm. 69 de 6 de julio de 1985. El P. del S. 130, que dio origen a la ley que sanciona el discrimen por razón de sexo en la relación de empleo, no incluía una disposición contra represalia. Véase, P. del S. 130, 13 de febrero de 1985. Esta aparece por primera vez en el Informe Conjunto de las Comisiones de Desarrollo Social y Cultural y de lo Jurídico del Senado sobre el P. del S. 130. Se recomendó su inclusión "a los fines de prohibir cualquier tipo de represalias contra las personas que se amparen en esta Ley."[11] Informe Conjunto de las Comisiones de Desarrollo Social y Cultural y de lo Jurídico del Senado sobre el P. del S. 130, 6 de mayo de 1985, págs. 3-4, 7-8.

Según surge de los informes de las comisiones legislativas que examinaron el proyecto y de la Exposición de Motivos de la Ley, el propósito de la Legislatura al aprobarla fue fortalecer y ampliar las disposiciones ya existentes que sancionan el discrimen por razón de sexo. Esto a fin de adelantar la lucha por la erradicación de esta nefasta práctica discriminatoria.[12]

---

11   El texto propuesto, y posteriormente aprobado, es el siguiente:

Será práctica ilegal del trabajo, el que el patrono, organización obrera o comité conjunto obrero-patronal que controle programas de aprendizaje, adiestramiento o readiestramiento, incluyendo programas de adiestramiento en el empleo, despida o discrimine contra cualquier empleado o participante que presente una queja o querella o que se oponga a prácticas discriminatorias o que participe en una investigación o proceso contra el patrono, organización obrera o comité conjunto obrero-patronal por prácticas discriminatorias. Ley Núm. 69 de 6 de julio de 1985, Artículo 20, Leyes de Puerto Rico (1985), págs. 252, 264; 29 L.P.R.A. sec. 1340.

12   En este sentido se expresó en la Exposición de Motivos de la ley:

En Puerto Rico contamos con la Ley Núm. 100 de 30 de junio de 1959, según enmendada por la Ley Núm. 50 de 30 de mayo de 1972, la cual incluyó la razón de sexo, junto a otros motivos por los cuales no se puede discriminar contra un empleado.

Sin embargo, a pesar de que la Constitución del Estado Libre Asociado y de la legislación que protege a nuestros ciudadanos de cualquier discrimen por razón de su sexo en el empleo, existe un largo camino para conseguir el fiel y real cumplimiento de los mandatos de nuestra ley suprema, viéndose afectada en la gran mayoría de los casos la mujer. (Cita

La posición de Wrangler de que la aprobación de una disposición contra la represalia en la Ley Núm. 69 indica que la Sección 21 de la Ley Núm. 96 no es aplicable a cualquier ley laboral, no tiene base alguna para sostenerse. La Legislatura simplemente consideró necesario robustecer la política pública de lucha contra este discrimen proveyendo medidas adicionales a las existentes para ello.

En segundo lugar, el recurrido nos adelanta como fundamento para su interpretación que de las discusiones en la Legislatura sobre el P. de la C. 712, se puede inferir que la Sección 21 de la Ley de Salario Mínimo sólo aplica a leyes de reclamaciones de salario. No le asiste la razón. Aunque, como ya señalamos, no existe expresión alguna en el historial legislativo de la Ley Núm. 105 que indique la intención del legislador al enmendar la Sección 21 de la Ley Núm. 96 en el 1964, en el historial legislativo de la Ley Núm. 65 de 3 de julio de 1986, hay expresiones que nos orientan sobre el alcance de la Ley Núm. 96. Del Informe de las Comisiones del Trabajo y Asuntos del Veterano, y de Comercio e Industria de la Cámara de Representantes sobre el P. de la C. 712, surge que el propósito de éste fue extender la protección ya reconocida a los trabajadores que declararan en investigaciones relacionadas con violaciones a las leyes y reglamentos del trabajo, en el foro administrativo, judicial o <u>legislativo</u>. Señala el informe, en la página 3:

> De esta manera la protección conferida adquiere un carácter uniforme y cubre a todo empleado que participe en cualquier investigación que se realice en nuestro país por cualesquiera de los foros señalados. La investigación puede ser realizada por una agencia del gobierno estatal, un gobierno municipal o una agencia federal. Esta protección que incluye el derecho a reposición en el empleo y a una compensación equivalente a los salarios y beneficios dejados de percibir a raíz del despido; fortalecerá sin duda, los procesos investigativos que realicen las distintas dependencias de nuestro gobierno, incluyendo las de las distintas comisiones legislativas.

Por su parte, el Informe de la Comisión de Trabajo del Senado de 25 de mayo de 1986, a la pág. 2, reconoce que en "nuestro ordenamiento legal

---

omitida.) Exposición de Motivos, Ley Núm. 69 de 6 de julio de 1985, Leyes de Puerto Rico (1985), pág. 254.

en el área de trabajo existen distintas leyes que protegen a los empleados cuando comparecen a los foros administrativos o judiciales", y cita la Ley de Salario Mínimo, entre otras.  De manera similar se expresó el Sr. Juan M. Rivera González, entonces Secretario del Trabajo de Puerto Rico, en su informe sobre el P. de C. 712, pág. 1:

> 2.  No debe pasarse por alto el hecho de que una protección análoga a la que la medida intenta incorporar en la Ley Núm. 80 existe ya con unos alcances remediales mucho más amplios en la legislación protectora del trabajo vigente.  Véase en este sentido la actual Sección 21 (anterior Sección 24) de la Ley de Salario Mínimo de Puerto Rico (Ley Núm. 96 de 26 de junio de 1956, según enmendada).[13]

Durante una vista pública en torno al P. de la C. 712, celebrada el 6 de abril de 1986, por la Comisión del Trabajo, el Procurador del Trabajo, señaló que la protección que se pretendía añadir a la Ley Núm. 80, ya existía con remedios más amplios, en la Ley de Salario Mínimo. Por consiguiente, señaló que lo único necesario era enmendar la Ley Núm. 96 para incluir al foro legislativo entre aquellos en los que el trabajador puede testificar sin temor a ser despedido.  Véase, Notas de la Vista Pública de 8 de abril de 1986 sobre el P. de la C. 712, Escrutinio Legislativo, Inc., 1986, págs. 1-2.

---

13  En el Memorando de 7 de abril de 1986, del Sr. Mario Roche Velázquez, de la Oficina del Cabildero Laboral adscrita al Comité de Organizaciones Sindicales, al Presidente de la Comisión del Trabajo de la Cámara de Representantes respecto al P. de la C. 712, el señor Roche Velázquez expresó a la Legislatura que ya existían leyes que proveían remedios para situaciones similares a la que se pretendía sancionar en el P. de la C. 712, entre ellas la Ley Núm. 96.

La Ley 96 (Ley de Salario Mínimo) por ejemplo en su sección 245W establece multas hasta $1,000 y pena de cárcel cuyo máximo alcance puede ser de seis meses de cárcel para aquellos patronos que hayan incurrido en alguna acción discriminatoria contra un empleado o ex-empleado porque éste se haya querellado, haya ofrecido, o prestado testimonio o se disponga a ofrecerlo o prestado en alguna investigación, querella, reclamación, o audiencia o procedimiento administrativo o judicial "que se lleve a cabo o se vaya a llevar a cabo.

Al respaldar la propuesta enmienda a la Ley 80 según la contempla el P. de la C. 712 no estamos reclamando nada que no esté ya garantizado en diferentes leyes, algunas de las cuales tienen más de 40 años de haber sido aprobadas.  (Enfasis suplido.)  Memorando del Sr. Mario Roche Velázquez, 7 de abril de 1986, pág. 4.

De todo lo anterior se puede colegir que la intención, al aprobarse la enmienda a la Ley Núm. 80, fue extender la protección conferida por otras leyes, entre estas la Ley de Salario Mínimo, a las investigaciones de la Asamblea Legislativa, y uniformar la protección cuando se testifica en los distintos foros públicos. Así surge además de su Exposición de Motivos que en su parte pertinente lee:

> La política pública vigente y reiterada tiene en una estimación alta la protección de los trabajadores en sus empleos. Esta protección se extiende a la comparecencia de trabajadores a distintos foros. Es menester ratificar y confirmar esta protección y que quede clara y patentemente establecida la protección de los trabajadores en sus empleos cuando comparecen ante la Legislatura, foros administrativos y judiciales para colaborar con dichos foros y además se expresen acerca de los negocios de sus patronos, sin que ello se considere justa causa para despido. (Enfasis suplido.) Leyes de Puerto Rico (1986), págs. 231, 232.

Como hemos podido apreciar, la aprobación de las disposiciones contra la represalia en las Leyes Núm. 69 y 65 constituye una ratificación y ampliación de la protección ya provista por la Ley Núm. 96.[14] El planteamiento del recurrido Wrangler carece de méritos.

C

Wrangler también objeta la aplicación de la Sección 21 de la Ley Núm. 96 al codemandante Dorante por razones constitucionales. En este sentido, alega que la Ley adolece de vicio constitucional por infracción

---

14   En 1991, se aprobó una ley general que prohibe la represalia. Ley Núm. 115 de 20 de diciembre de 1991, Leyes de Puerto Rico (1991) pág. 959, 29 L.P.R.A. secs. 194 y et seq. En el Informe de la Comisión de Trabajo y Asuntos del Veterano de la Cámara de Representantes sobre el P. del S. 987, proyecto que dio origen a la Ley Núm. 115 de 1991, se expresó que su propósito es ampliar la protección establecida en la Ley Núm. 65 de 3 de julio de 1986. Véase, Informe de la Comisión de Trabajo y Asuntos del Veterano de la Cámara de Representantes sobre el P. del S. 987, págs. 3,4,6. En el memorando del Lcdo. Ruy Delgado Zayas sobre el P. del S. 987, de 18 de marzo de 1991, que fue sometido a la Comisión de lo Jurídico del Senado, se reconoce la Sección 21 de la Ley Núm. 96 como un remedio legal análogo al que se proponía en el proyecto. Véase, Memorando del Lcdo. Ruy Delgado Zayas sobre el P. del S. 987, 18 de marzo de 1991, págs. 4 y 5, escolio 1. La Exposición de Motivos de la Ley Núm. 115 de 1991, al igual que la Ley Núm. 69 de 1986, expone que su propósito es ratificar la política pública de protección a los trabajadores. Leyes de Puerto Rico (1991), pág. 957.

a la Sección 17 del Artículo III de la Constitución del Estado Libre Asociado de Puerto Rico. Pasemos a considerar dicho planteamiento.

La Constitución del Estado Libre Asociado establece que "[n]o se aprobará ningún proyecto de ley, con excepción de los de presupuesto general, que contenga más de un asunto, el cual deberá ser claramente expresado en su título, y toda aquella parte de una ley cuyo asunto no haya sido expresado en el título será nula". Constitución del Estado Libre Asociado de Puerto Rico, Art. III, Sec. 17. Al interpretar la transcrita disposición constitucional, hemos dicho que solamente en un caso claro y terminante se justifica anular una ley por adolecer su título de deficiencias. Cervecería Corona, Inc. v. J.S.M., 98 D.P.R. 801, 811 (1970); Sunland Biscuit Co. v. Junta Salario Mínimo, 68 D.P.R. 371, 381 (1948); Rivera v. Corte, 62 D.P.R. 513, 540 (1943). El propósito tras la disposición constitucional en cuestión es:

> impedir la inclusión en la ley de materia incongruente y extraña, y a la vez poner en guardia contra la inadvertencia, la ocultación y el fraude en la legislación,... 'evitar la práctica, corriente en todas las legislaturas donde no existe tal disposición, de incluir en la ley materias incongruentes que no tienen relación alguna entre sí o con el sujeto especificado en el título, a virtud de lo cual se aprueban medidas sin atraer atención que, si hubieran sido vistas, hubieran sido impugnadas y derrotadas. Así parece evitar sorpresas en la legislación (Citas omitidas.) Rivera, supra, pág. 539.

En otras palabras, el objetivo de los requisitos constitucionales en cuanto al título de un proyecto de ley, "[e]s informar al público en general y a los legisladores en particular el asunto que es objeto de la ley, de forma que el primero pueda oponerse a su aprobación si la considera lesiva y los segundos estén en condiciones de emitir su voto conscientes del asunto objeto de legislación." (Cita omitida.) Cervecería Corona, Inc. v. J.S.M., supra, pág. 812.

Hemos aclarado que no es necesario que el título contenga una descripción minuciosa de lo que se intenta aprobar. Es suficiente que exprese el propósito de la ley en términos generales. Id. "[N]o tiene que ser un índice de su contenido, sino que bastará con que el mismo sea un poste indicador de ésta." Sunland Biscuit Co. v. Junta Salario

Mínimo, supra, pág. 380; Rivera v. Corte, supra, pág. 539; Pueblo v.

Pérez Méndez, 83 D.P.R. 228, 230 (1961).

Específicamente en cuanto a leyes enmendatorias se refiere, como el

caso ante nos, hemos resuelto lo siguiente:

> [l]a doctrina prevaleciente no requiere que en el título se
> expongan los cambios específicos que se intentan en virtud de
> la enmienda propuesta, siempre que la materia no sea remota o
> extraña a la de la ley original. De forma que cuando la ley
> básica comprende razonablemente la materia cubierta por la
> enmienda propuesta basta una referencia a la sección o artículo
> que se intenta enmendar. Sólo cualquier materia o asunto de
> carácter sustantivo que no sea germano con la sección o
> artículo especificado transgredirá la norma constitucional.
> (Enfasis suplido y citas omitidas.) Cervecería Corona, Inc. v.
> J.S.M., supra, pág. 712.

En otras palabras, "[s]e ha resuelto que siempre que materia

enmendatoria sea congruente con el asunto de la ley original, un

título... cumple con el requisito constitucional. A contrario sensu, si

la materia enmendatoria constituye una clara desviación y un cambio

completo del asunto de la ley original, en tales circunstancias un título

como el indicado infringe el precepto constitucional". Laboy v. Corp.

Azucarera Saurí & Subirá, 65 D.P.R. 422, 428 (1945).

En varios casos hemos sostenido la constitucionalidad de una ley

enmendatoria a la luz del Artículo III, Sección 17 de nuestra

Constitución. Veamos.

En Cervecería Corona, Inc. v. J.S.M., supra, se alegó que la

actuación de la Junta de Salario Mínimo, al aprobar una revisión al

Decreto Núm. 72 aplicable a la industria de bebidas alcohólicas y de

alcohol industrial, era nula e ineficaz, ya que la ley que autorizó la

actuación de la Junta era inconstitucional por violar la disposición

constitucional en cuestión. En esa ocasión sostuvimos la validez de la

ley enmendatoria y, por ende, la actuación de la Junta, ya que la

enmienda se refería a materias "[g]ermanas, sugeridas por y

suplementarias de las distintas secciones enmendadas". Además,

enfatizamos el hecho de que la adopción de los requisitos reglamentarios

relativos a la manera de enmendar legislación, (tales como que las

palabras añadidas se subrayen y las eliminadas se cierren entre llaves) y

la exigencia de la presentación de informes reducían grandemente el temor de que se introdujera materia extraña a la legislación.

En Sunland Biscuit Co. v. Junta Salario Mínimo, supra, se cuestionó la validez de una sección de una ley enmendatoria fijando el salario mínimo aplicable a la industria de la harina ya que su título alegadamente no daba aviso de que se convalidarían las actuaciones hechas por los funcionarios de la Junta. La sección en específico dejaba en vigor todos los decretos promulgados por la Junta antes de la aprobación de la ley, y a renglón seguido, disponía la convalidación de todos los actos y actuaciones hechos por los funcionarios y empleados de la Junta. Sostuvimos la validez de la sección en cuestión, expresando que aunque el título, de hecho, nada decía sobre la convalidación de las actuaciones de los funcionarios, sí servía de poste indicador del contenido de la enmienda.[15] La convalidación hecha no era incongruente o extraña al asunto contenido en su título.

Por otro lado, en Pueblo v. Pla Hnos. Dry Cleaning Plant, 73 D.P.R. 196 (1952), se alegó que era imposible interpretar que las enmiendas efectuadas a la Ley de Corporaciones Privadas, habían establecido como delito menos grave el no remitir el informe anual, ya que ninguno de los títulos de estas enmiendas indicaban la creación de dicho delito. Concluimos ahí que la creación del delito era congruente con el asunto de la ley original de Corporaciones Privadas, y, por ende, se cumplía con el requisito constitucional.[16]

─────────────────────

15  El título en cuestión especificaba las secciones a ser enmendadas, y enumeraba las materias incluidas en la legislación enmendatoria.

16  Similarmente, en otros casos que no necesariamente envuelven leyes enmendatorias, hemos sostenido la suficiencia del título de una ley. Pueblo v. Pérez Méndez, 83 D.P.R. 228, 231-32 (1961) (el título de la Ley de la Bolita no tiene que hacer referencia a "[l]a manera o forma de enjuiciar a los infractores... ya que es una cuestión incidental a la adecuada administración de la propia ley"; "estas disposiciones constitucionales se interpretan en forma liberal para reducir la intervención judicial en el procedimiento legislativo"); Compañía Popular v. Unión de Empleados, 69 D.P.R. 179, (1948) (descartándose el argumento de que las dos materias expresadas en el título de la ley [a efectos de proveer un día de descanso y doble paga a los empleados que trabajaran ese día] fueran diferentes; ambas materias estaban íntimamente relacionadas y tenían que ver con la misma cuestión); Rivera v. Corte, 62

Por otro lado, hemos anulado leyes o partes de éstas por deficiencia en sus títulos. En Laboy v. Corp. Azucarera Saurí & Subirá, supra, declaramos nula parte del contenido de una ley dirigida a enmendar el Artículo 553 del Código Penal sobre la Ley de Cierre. La enmienda en cuestión introducía al Código Penal una sección relativa a una materia de naturaleza estrictamente civil: la concesión por parte del patrono al empleado de un (1) día de descanso con salario íntegro por cada seis (6) de trabajo. El título de la enmienda meramente hacía referencia al artículo enmendado y terminaba con la frase "y para otros fines". Expresamos que la enmienda era "[u]na clara desviación del asunto original del artículo [enmendado]... el asunto de la sección 3 es de carácter puramente civil y quien lee el título de la Ley... difícilmente podrá sospechar que a un artículo del Código Penal se le haya adicionado una materia de naturaleza estrictamente civil." Id., pág. 429.

En Rodríguez v. Corte, 60 D.P.R. 919 (1942), anulamos una ley enmendatoria en su totalidad por haber una abierta contradicción entre el título y contenido de ésta, y por su título no expresar claramente el asunto de la enmienda. Mientras que el título indicaba que unos municipios serían parte del distrito judicial de Caguas, la ley los integraba al de Humacao. En esa ocasión enfatizamos el riesgo de que los legisladores pudieron haber sido inducidos a votar por el contenido confuso y erróneo del título de la ley.

Apliquemos la doctrina esbozada al presente caso. La ley enmendatoria en cuestión, Ley Núm. 105 de 26 de junio de 1964, presenta el siguiente título, "Para enmendar los incisos (a) de las Secciones 16 y 24 de la Ley número 96 de 26 de junio de 1956, según enmendada (Ley de Salario Mínimo de Puerto Rico)." Esta simplemente añadió la frase "o de cualquier otra ley laboral o reglamento promulgada al amparo de la misma" a los efectos de extender el ámbito de la protección contra represalia existente en la ley original. El propósito de la ley original, según

_____

D.P.R. 513 (1943) (título que a manera general anuncia la imposición de cierta contribución adicional sobre ingresos es suficiente; no tiene que

señalamos en <u>Limardo Costa</u> v. <u>Easter Sugar Associates,</u> <u>supra</u>, fue propiciar que los empleados prestaran testimonio en los distintos procedimientos relativos a la fijación de salarios mínimos y al establecimiento de condiciones de trabajo en las distintas industrias y actividades.

Aunque la enmienda efectuada indique un cambio de política pública al ampliar y extender la protección más allá de la esfera laboral referente al salario mínimo, no hay duda que dicha enmienda constituye un suplemento a la sección afectada que no introduce elemento incongruente o extraño alguno. Al contrario, esta suplementación está íntimamente relacionada y es totalmente congruente al asunto y contenido de la ley anterior. La ley enmendatoria en cuestión simplemente no lleva a cabo cambio alguno o desviación de lo que fue la Sección 21 de la Ley Núm. 96 en sus inicios. No le asiste la razón a Wrangler en su planteamiento de inconstitucionalidad de la Sección 21 de la Ley Núm. 96.

Tomando en consideración todo lo antes expuesto concluimos que las disposiciones de la Ley Núm. 96 les son aplicables al codemandante Dorante. Analizadas las alegaciones de la demanda a tenor con las normas procesales antes esbozadas resolvemos también que el codemandante Dorante expuso correctamente una reclamación de daños y perjuicios al amparo de dicha Ley.

IV

El recurrido Wrangler señala además, que la codemandante Maritza Mercado de Dorante no tiene derecho a remedio alguno al amparo de la Sección 21 de la Ley Núm. 96, porque "la ley expresamente se refiere a un 'empleado o ex empleado del patrono.'"

El texto de la ley en el inciso (c) de la Sección 21, expresamente declara que los remedios de ésta son para el empleado o ex empleado.[17] En

---

expresar el tipo de ingresos afectado).
17  La Sección 21 dispone en su inciso (c), sobre remedios, que:

su historial legislativo no aparecen expresiones que nos induzcan a considerar que el cónyuge del trabajador o ex empleado, que alega ser víctima de represalia, tenga, a su amparo, derecho a compensación alguna por razón de la represalia.[18]  Extender los remedios de la sección 21, inciso (c), a otras personas no contempladas, ni expresa ni implícitamente, por la disposición, constituiría un acto de grave menosprecio al claro texto de la ley.  Por lo tanto, concluimos que la codemandante Mercado de Dorante no tiene derecho a remedio alguno bajo la Sección 21 de la Ley Núm. 96.

Réstanos considerar si la codemandante Mercado de Dorante puede reclamar compensación, bajo el Artículo 1802 del Código Civil, por los daños que le ocasionó el alegado acto en represalia de Wrangler contra su esposo.  En Santini Rivera v. Serv. Air Inc., Op. 12 de septiembre de 1994, 137 D.P.R.___(1994), 94 JTS 121, examinamos una controversia similar en cuanto a la Ley Núm. 100.  Allí resolvimos que la novia y los padres de un empleado alegadamente discriminado por razón de origen nacional, en violación de la Ley Núm. 100, pueden instar una reclamación en daños y perjuicios bajo el Artículo 1802 del Código Civil.  También indicamos que debido al propósito específico de protección al empleado y aspirante a empleo de la Ley Núm. 100, era incompatible con ésta

---

[e]l patrono deberá reponer en su empleo al trabajador y cesar en la continuación del acto de que se trate.  Para obligarlo a cumplir esa obligación, tendrá competencia el Tribunal de Primera Instancia, mediante procedimientos sencillos, rápidos y preferentes, en los que se dará oportunidad de ser oídas a las partes interesadas.  En dichos procedimientos se investigarán también los daños que el acto haya causado al empleado o ex empleado, a cuyo favor se dictará sentencia por el doble del importe de los daños causados, además de concedérseles costas y una suma razonable, que nunca bajará de cincuenta (50) dólares, para honorarios de abogado. (Enfasis suplido.)  Ley Núm. 96 de 26 de junio de 1956, sección 21(c), 29 L.P.R.A. sec. 245w.

18  En las ocasiones en las que se discutió la sección en cuestión o el tema de la responsabilidad penal y civil por violaciones a la Ley, no se hicieron expresiones relativas a extender la protección de ésta a terceros.  Véase, Diario de Sesiones de la Asamblea Legislativa (Cámara de Representantes), San Juan, 1956, Vol. 8, Tomo 3, págs. 1065, 1068-1069, 1073, 1212, 1257.

reconocerle a su amparo, una causa de acción a la novia y a los padres del empleado alegadamente discriminado.

Por estas mismas razones debemos reconocerle una causa de acción bajo el Artículo 1802 del Código Civil, supra, al cónyuge de un empleado que alega haber sido víctima de represalia en violación a la Sección 21 de la Ley Núm. 96.

V

Por todo lo antes expuesto procede que se dicte sentencia revocando la sentencia parcial emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (entonces Tribunal Superior, Sala de San Juan) el 7 de marzo de 1986, y devolviendo el caso al foro de instancia para que continúen los procedimientos de forma compatible con lo aquí resuelto.

MIRIAM NAVEIRA DE RODON
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Emilio Dorante, et al.

      Recurrentes

                              RE-86-166

        v.

Wrangler of P.R., et al.

      Recurridos


SENTENCIA

San Juan, Puerto Rico, a 27 de abril de 1998

Por los fundamentos antes expuestos, se dicta sentencia revocando la sentencia parcial emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (entonces Tribunal Superior, Sala de San Juan) el 7 de marzo de 1986, y se devuelve el caso al foro de instancia para que continúen los procedimientos de forma compatible con lo aquí resuelto.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Negrón García concurre en el resultado que revoca la sentencia del ilustrado foro de instancia haciendo constar que:

No procedía desestimar las acciones promovidas por los esposos Dorante-Mercado contra Wrangler. Aunque ellos originalmente no invocaron expresamente la Ley Núm. 96 de 26 de junio de 1956, según enmendada por la Ley Núm. 105 de 26 de junio de 1964 (29 L.P.R.A. sec. 245w), -que reconoce una acción en daños cuando el patrono discrimina 'en cualquier forma' porque el empleado haya testificado contra él en un procedimiento bajo cualquier ley laboral-, la demanda exponía suficientes hechos susceptibles de ser así estimados. No era menester una exposición de una causa de acción separada a nivel de instancia.

A tono con Maldonado Rodríguez v.

Banco Central, res. en 21 de abril de 1995, la reclamación en daños por el alegado discrimen laboral corresponde a Dorante. Reiteramos que la Ley Núm. 96 es de índole laboral y los familiares del obrero no pueden reclamar daños y perjuicios bajo sus disposiciones. Ahora bien, nada impide a su esposa instar una acción separada, distinta y **contingente** bajo el Art. 1802 del Código Civil.

Finalmente, no tenemos dudas en cuanto a la constitucionalidad y validez de la Ley Núm. 105. La enmienda del 1964 es germana y congruente con la Ley principal Núm. 96 sobre Salario Mínimo y el asunto contenido en el artículo o sección enmendada. La materia de la enmienda no es remota ni extraña a los propósitos, espíritu y fines perseguidos por la ley principal.

El Juez Asociado señor Rebollo López emitió Opinión Concurrente. El Juez Asociado señor Corrada del Río emitió Opinión Disidente.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Emilio Dorante, et als.

    Demandantes-recurrentes

        v.                     RE-86-166          REVISION

Wrangler of Puerto Rico, et als.

    Demandados-recurridos

Opinión concurrente emitida por el Juez Asociado Señor Rebollo López

San Juan, Puerto Rico, a

Emilio Dorante, su esposa Maritza Mercado de Dorante, y la sociedad legal de gananciales compuestas por ambos --en adelante,"Dorante"-- radicaron ante el Tribunal Superior de Puerto Rico, Sala de San Juan, acción en reclamación de daños y perjuicios alegadamente sufridos como consecuencia del despido del señor Dorante de su empleo como supervisor de ventas en Wrangler de Puerto Rico, División de Blue Bell, Inc. (en adelante Blue Bell). Alegaron que dicho despido fue motivado por la comparecencia, como testigo, del señor Dorante en un procedimiento judicial incoado por un ex-compañero de trabajo, el señor Robert F. Gordils, en el cual este último demandó a Blue Bell, bajo las disposiciones de la Ley 100 de 30 de junio de 1959 según enmendada, 29 L.P.R.A., sec. 146, por haberle ésta alegadamente despedido

por razón de su edad.[19]

La demanda incoada por Dorante imputa que la conducta de Blue Bell "choca y violenta la ley y política pública del Estado Libre Asociado de Puerto Rico que requiere de todo ciudadano que diga la verdad especialmente cuando de procedimientos judiciales se trata" y que la misma "constituye un acto torticero exento de las disposiciones de la Ley sobre Despidos Injustificados", Ley 80 del 30 de mayo de 1976, 29 L.P.R.A., sec. 185. Dorante reclamó resarcimiento por daños y perjuicios de diversas índoles --angustias mentales, pérdidas económicas, pérdidas futuras de ingresos-- así como el pago de "comisiones ganadas y no pagadas".

Luego de ser emplazada, y sin haber aun contestado la demanda, Blue Bell solicitó la desestimación de la reclamación en daños y perjuicios, apoyándose en la aplicabilidad del remedio exclusivo provisto por la citada Ley 80. Dorante replicó, reafirmándose en la procedencia de su reclamación bajo el Art. 1802 del Código Civil y, además, señaló tener una causa de acción bajo las disposiciones de la antes citada Ley 100. Sobre la primera, adujo que "razones de política pública crean una excepción a la teoría del despido sin justa causa". En cuanto a la segunda, expresó que los daños a los cuales tiene derecho deben necesariamente ser aquellos a los que tiene derecho un demandante bajo la citada Ley 100; ello en vista de que su despido, alegadamente motivado por su participación en un procedimiento judicial contra el patrono bajo dicha Ley 100, "constituye un eslabón más dentro de la cadena discriminatoria del patrono".[20] En oposición a la réplica, la parte

---

[19] Gordils v. Blue Bell, Inc., Civil Núm. 83-1598, ante la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico. En dicho caso el señor Gordils también reclamó daños bajo el "Age Discrimination In Employment Act", 29 U.S.C.A., sec. 621 et seq.

[20] La Ley 100 dispone que un patrono incurrirá en responsabilidad por una suma igual al doble del importe de los daños que el acto haya causado al empleado o solicitante de empleo; o por una suma no menor de $100.00 ni mayor de $1,000.00, a discreción del tribunal, si no se pudieran determinar daños pecuniarios; o el doble de la cantidad de los daños ocasionados si esta fuere inferior a la suma de $100.00 e, incurrirá además en delito menos grave, y una vez convicto será castigado con multa no menor de $100.00 ni mayor de $500.00 o cárcel por término no menor de 30 días ni mayor de 90 días, o ambas penas, a discreción del Tribunal. 29 L.P.R.A., sec. 146.

demandada reiteró su posición en cuanto a la improcedencia de las reclamaciones bajo la Ley 100 y el Art. 1802 del Código Civil.

El Tribunal Superior, Sala de San Juan, acogió la solicitud de desestimación de la parte demandada y el día 7 de marzo de 1986 emitió Sentencia Parcial en la que desestimó las reclamaciones bajo la Ley 100 y bajo el Art. 1802 del Código Civil.  En dicha sentencia, el tribunal señaló que la Ley 100 no es de aplicación al caso de autos pues Dorante no fue víctima de ninguno de los tipos de discrimen descritos en dicha Ley.[21]  En cuanto a la desestimación de la reclamación bajo el Art. 1802, el Tribunal Superior no adujo en su Sentencia fundamento alguno para su decisión, aparentemente acogiendo el planteamiento del demandado en cuanto a la procedencia del "remedio exclusivo" provisto por la Ley 80.

Inconforme, la parte demandante recurrió ante este Tribunal señalando que el Tribunal Superior erró al aplicar el remedio exclusivo de la Ley 80 a los hechos de este caso y solicitando que revocáramos la sentencia parcial en la cual el foro de instancia desestimó la causa de acción bajo el Art. 1802 del Código Civil.  En específico, <u>y cambiando un tanto su teoría, aduce</u>:

"1)  Que el despido del recurrente queda expresamente cobijado por la sección 24 de la <u>Ley 96</u> del 20 de junio de 1956, 29 L.P.R.A., sec. 245w.[22]

---

[21]  La Ley 100 prohíbe el discrimen por razón de edad, raza, color, religión, sexo, origen social o nacional, condición social, ideas políticas o religiosas.  En lo pertinente, su Art. 1 dispone que:

"Todo patrono que despida, suspenda o discrimine contra un empleado suyo en relación a su sueldo, salario, jornal o compensación, términos, categorías, condiciones o privilegios de su trabajo, o que deje de emplear o rehúse emplear o reemplear una persona, o limite o clasifique sus empleados en cualquier forma que tienda a privar a una persona de oportunidades de empleo o que afecten su status como empleado, por razón de edad, según ésta se define más adelante, raza, color, sexo, origen social o nacional, condición social, ideas políticas o religiosas del empleado o solicitante de empleo:

(a) incurrirá en responsabilidad civil...
(b) incurrirá, además, en un delito menos grave..."

[22]  La Sección 24 de la Ley 96 del 20 de junio de 1956, provee un remedio de resarcimiento por el <u>doble</u> de los <u>daños</u> ocasionados por la actuación del patrono a cualquier empleado sancionado por haber prestado testimonio en cualquier procedimiento administrativo o judicial, que se lleve a cabo en relación con la aplicación de cualquier ley laboral. 29 L.P.R.A., sec. 245w.

En particular, su Inciso (c) dispone que:

"El patrono deberá reponer en su empleo al trabajador y cesar en la continuación del acto de que se trate.  Para obligarlo a cumplir esa obligación, tendrá competencia el Tribunal de Primera Instancia, mediante procedimientos sencillos, rápidos y preferentes,

2) Que de no existir la protección de la <u>Ley 96</u>, el despido del señor Dorante <u>estaría excluido de las disposiciones de la Ley 80 (remedio exclusivo) por razones de política pública</u>, por lo que el recurrente tiene causa de acción bajo el Art. 1802 del Código Civil."

Expedimos el auto de revisión solicitado. En el día de hoy una mayoría de los integrantes del Tribunal revoca la sentencia parcial recurrida; curso de acción con el cual, <u>aun cuando por fundamentos distintos</u>, concurrimos. Veamos.

I

Nos confrontamos, en esencia, con los méritos de una moción de desestimación radicada por la parte demandada bajo las disposiciones de la Regla 10.2 de las de Procedimiento Civil y declarada con lugar por el tribunal de instancia. Ello nos obliga, conforme norma jurisprudencial al efecto, a dar por ciertas y buenas todas las alegaciones hechas en la demanda. <u>Ramos</u> v. <u>Marrero</u>, 116 D.P.R. 357, 369 (1985); <u>First Federal Savings</u> v. <u>Asoc. de Condómines</u>, 114 D.P.R. 426 (1983), y a considerarlas de la manera más favorable para la parte reclamante. <u>Unisys</u> v. <u>Ramallo</u>, Opinión y Sentencia de 28 de junio de 1991, 91 JTS 69; <u>Romero</u> v. <u>E.L.A.</u>, Opinión y Sentencia de 24 de enero de 1991, 91 JTS 5; <u>Candal</u> v. <u>C.T. Radiology Office, Inc.</u>, 112 D.P.R. 227, 231 (1982). Procede entonces que, a la luz de las alegaciones hechas en la demanda --las cuales incluyen que el demandante-recurrente, Emilio Dorante, fue despedido por haber testificado a favor del señor Gordils en un proceso judicial contra Blue Bell-- y tomadas ellas como ciertas para efectos del presente recurso, determinemos la validez de los señalamientos de error hechos por el recurrente.

---

<u>en los que se dará oportunidad a ser oídas a las partes interesadas. En dichos procedimientos se investigarán también los daños que el acto haya causado al empleado o ex empleado, a cuyo favor se dictará sentencia por el doble del importe de los daños causados</u>, además de concedérseles costas y una suma razonable, que nunca bajará de cincuenta (50) dólares, para honorarios de abogado." 29 L.P.R.A., sec. 245w(c) (Subrayado nuestro.)

II

En la Sentencia Parcial que emitiera, el Tribunal Superior se limitó a desestimar las causas de acción que la parte demandante había alegado tener bajo la Ley 100 y bajo el Art. 1802 del Código Civil.[23] En dicha sentencia, el foro de instancia nada dispuso con respecto a una posible reclamación bajo la Ley 96. Esto es perfectamente comprensible en vista del hecho de que, en las alegaciones que el aquí recurrente hiciera ante el foro de instancia, éste se limitó a reclamar los remedios provistos por la Ley 100 y el Art. 1802 del Código Civil.[24] Por lo tanto, la sentencia parcial del 7 de marzo de 1986 no podía referirse ni tuvo --ni pudo tener-- el efecto de desestimar una reclamación que <u>no</u> estaba planteada en ese momento ante el tribunal.

En nuestro criterio, el reclamante que interese que el foro judicial aplique a los hechos de su caso las disposiciones de la citada Ley 96 viene en la obligación de así solicitarlo expresamente --mediante la exposición de una causa de acción separada-- a nivel de instancia y no, por primera vez, en apelación. A pesar de que tanto la reclamación bajo el Art. 1802 del Código Civil como la reclamación bajo el Art. 24 de la Ley 96 son ambas reclamaciones en daños y perjuicios que han de regirse, en lo sustantivo, por la doctrina general de daños y por la jurisprudencia desarrollada en acciones generalmente incoadas bajo el Art. 1802, <u>éstas surgen de estatutos distintos y encierran una real e importante distinción en cuanto al remedio que confieren</u>. Mientras que el Art. 1802 es un estatuto general de responsabilidad civil que confiere al agraviado el derecho a recobrar los daños sufridos, el Art. 24 de la

---

[23]    En la parte dispositiva de la Sentencia Parcial del 7 de marzo de 1986, el Tribunal Superior señaló:

"Por los fundamentos expuestos y no existiendo razón alguna para posponer el dictar sentencia hasta la resolución del litigio, <u>se desestima la acción bajo la Ley Número 100, supra, y el Art. 1802 de nuestro Código Civil.</u>" (Subrayado nuestro.)

[24]    Ni del expediente ni de los autos originales surge que la parte demandante haya hecho en instancia reclamación alguna bajo la Ley 96. Dicha ley fue invocada por primera y única vez en Moción de Reconsideración radicada con posterioridad a que el tribunal de instancia emitiera la Sentencia Parcial en que desestimó las reclamaciones bajo la Ley 100 y bajo el Art. 1802 del Código Civil. <u>Esa moción no fue atendida por el tribunal de instancia por haber sido radicada fuera de término.</u>

Ley 96 es una ley especial que confiere el derecho a recobrar el doble de esos daños. Por consiguiente, ambas disposiciones establecen causas de acción separadas y distintas.

Ante estos hechos procesales, a nuestro juicio este Tribunal no debe, en esta etapa de los procedimientos, emitir criterio alguno sobre la existencia o inexistencia de una causa de acción --bajo dicha Ley 96-- que no ha estado, ni está, bajo la consideración del tribunal de instancia. Menos aún debemos expresarnos sobre la procedencia o improcedencia en este caso del remedio dispuesto por ese estatuto. Sólo cuando la parte demandante, de entenderlo conveniente, haya levantado formalmente una reclamación bajo dicha Ley 96 ante el Tribunal Superior, y la misma haya sido atendida adecuadamente por dicho foro, estará este Tribunal en posición de pasar juicio sobre los méritos de tal reclamación. Trabal v. Cruz Rodríguez, Opinión y Sentencia del 26 de enero de 1990; Sánchez v. Eastern Air Lines, Inc., 114 D.P.R. 691 (1983); Santiago Cruz v. Hernández Andino, 91 D.P.R 709, 712 (1965).


III

Ahora bien, la citada Ley 96 de 1956 sí tiene relevancia, de manera supletoria, en el presente caso. La Ley 80 de 30 de mayo de 1976, 29 L.P.R.A. sec. 185a et seq., fue creada con el propósito de proveer un remedio a los empleados contratados, sin término fijo de tiempo, que son despedidos sin justa causa.[25] Este remedio, hemos resuelto, es uno exclusivo, por lo que en tales casos, el empleado despedido sólo puede reclamar de su patrono la compensación dispuesta por el Artículo 1 de la

---

[25] En lo pertinente, el Art. 1 de la Ley 80 dispone que:

"Todo empleado ...., (que) trabaja mediante remuneración de alguna clase contratado sin tiempo determinado, que fuere despedido de su cargo sin que haya mediado una justa causa, tendrá derecho a recibir de su patrono en adición al sueldo que hubiere devengado:

(a) el sueldo correspondiente a un mes por concepto de indemnización;

(b) una indemnización progresiva adicional equivalente a una semana por cada año de servicio."

mencionada Ley.  29 L.P.R.A. sec. 185a.  <u>Rivera</u> v. <u>Security National Life Ins. Co.</u>, 106 D.P.R. 517 (1977).

Ello no obstante, este Tribunal ha resuelto, <u>a manera de excepción</u>, que el empleado despedido sin justa causa podrá reclamar otros tipos de remedio cuando su despido haya sido realizado <u>con el propósito y la intención de frustrar o subvertir, o tenga el efecto de frustrar o subvertir, una clara política pública</u>.  Véase: <u>Arroyo</u> v. <u>Rattan Specialties, Inc.</u>, 117 D.P.R. 35, 65 (1986).  El recurrente señala que esta norma controla el caso de autos pues existen razones de política pública que impiden que el remedio exclusivo de la Ley 80 sea aplicable a la situación que aquí nos ocupa.  <u>Tiene razón</u>.

En el pasado hemos señalado que para determinar la política pública del Estado Libre Asociado de Puerto Rico debe tomarse en consideración su Constitución y sus leyes, así como las decisiones emitidas por el foro judicial.  <u>Matos</u> v. <u>Siaca</u>, 21 D.P.R. 420, 429 (1914); <u>Pueblo</u> v. <u>González Malavé</u>, 116 D.P.R. 578, 586 (1985).  La política pública del Gobierno de Puerto Rico, respecto a la comparecencia de empleados a procedimientos judiciales y administrativos de índole laboral, fue establecida por el Poder Legislativo al aprobar la antes mencionada Ley 96 del 26 de junio de 1956. El Inciso (a) de la Sección 24 de esta Ley, según enmendada, tipifica como delito menos grave, entre otras cosas, el que un patrono despida a un empleado por haber ofrecido testimonio en algún procedimiento judicial que se lleve a cabo con relación a las disposiciones de las leyes laborales.[26]  La Ley 96 responde al propósito

---

[26]  El texto completo del Inciso (a) del Art. 24 reza:

> "Todo patrono que despida, suspenda, rehúse admitir o restituir, reduzca el salario, rebaje en categoría, aumente las horas de labor o imponga otras condiciones de trabajo más onerosas a un empleado o ex empleado suyo, discrimine en cualquier forma o amenace cometer contra él cualquiera de estos actos para evadir el cumplimiento de las secs. 245 et seq. de este título, o de cualquier otra ley laboral o reglamento promulgado al amparo de las mismas o de cualquier decreto u orden de la Junta porque dicho empleado o ex empleado se haya querellado, haya ofrecido o prestado testimonio o se disponga a ofrecerlo o prestarlo, en alguna investigación, querella, reclamación, audiencia o procedimiento administrativo o judicial que se lleve o haya llevado a cabo en relación con la aplicación de las secs. 245 et seq. de este título o de cualquier otra ley laboral o reglamento promulgado al amparo de las mismas o de cualquier decreto, orden, reglamento, resolución o acuerdo de la Junta, o porque haya servido, sirva o se proponga servir como miembro de un

de fomentar la comparecencia de los obreros y empleados para la prestación de testimonio en los procedimientos relacionados con la fijación de salarios y el establecimiento de condiciones apropiadas de trabajo, así como para evitar actos que puedan responder a un propósito de discrimen o represalia. Limardo Acosta v. Eastern Sugar Associates, 84 D.P.R. 269, 273-274 (1961); Berríos v. Eastern Sugar Associates, 85 D.P.R. 121, 125-126 (1962).

Ante esta clara política pública resulta, prima facie, improcedente aplicar al presente caso el remedio exclusivo provisto por la Ley 80. En consecuencia, somos del criterio que el recurrente Emilio Dorante --a base de los hechos por él alegados-- tiene contra su antiguo patrono una causa de acción bajo el Art. 1802 de nuestro Código Civil. Debe quedar claro, sin embargo, que su derecho a recobrar bajo esa disposición de nuestro ordenamiento está sujeto a que éste pueda demostrar, en juicio plenario ante el foro de instancia, los hechos que para efectos de este recurso hemos dado por ciertos; a saber: que su despido de Blue Bell efectivamente constituyó una represalia del patrono por él haber comparecido a testificar en el pleito incoado por el señor Gordils contra la mencionada corporación.[27]

Por los fundamentos expuestos es que concurrimos con la acción mayoritaria de revocar la sentencia parcial dictada en el presente caso por el antiguo Tribunal Superior de Puerto Rico, Sala de San Juan.

FRANCISCO REBOLLO LOPEZ

---

Comité de Salario Mínimo, incurrirá en un delito menos grave, y una vez convicto, se le impondrá una multa de cien (100) a mil (1,000) dólares o cárcel por término de un (1) mes a seis (6) meses, o ambas penas a discreción del tribunal." 29 L.P.R.A., sec. 245w(a).

[27] El Artículo 2 de la Ley Núm. 80, supra, fue enmendado por la Ley Núm. 65 de 3 de julio de 1986, para proveer que los empleados despedidos por colaborar o por hacer expresiones en los foros gubernamentales tendrán derecho a ser reinstalados en sus empleos y a recibir los salarios dejados de percibir. 29 L.P.R.A. sec. 185(a).

Aun cuando la enmienda mencionada fue adoptada con posterioridad a la ocurrencia de los hechos aquí en controversia, dicha enmienda fortalece la conclusión a la que llegamos.

**Juez Asociado**

**Juez Asociado**

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Emilio Dorante, et al.

    Recurrentes

      v.                      RE-86-166

Wrangler of P.R., et al.

    Recurridos


Opinión Disidente emitida por el Juez Asociado SEÑOR CORRADA DEL RIO


San Juan, Puerto Rico, a 27 de abril de 1998.

La opinión que emite el Tribunal en el caso de autos resuelve que la Ley Núm. 105 de 26 de junio de 1964 no infringe la Sección 17 del Artículo III de la Constitución del Estado Libre Asociado de Puerto Rico. Dispone además, que el cónyuge de un empleado que alega haber sido víctima de represalia en violación a la Sección 21 de la Ley Núm. 96 del 26 de junio de 1956[28], 29 L.P.R.A. sec. 245 <u>et seq.</u>, tiene una causa de acción en contra del patrono bajo el Artículo 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5141. No podemos concurrir con lo resuelto. Veamos.

I

La Constitución del Estado Libre Asociado de Puerto Rico dispone que: "...No se aprobará ningún

---

[28]Ley de Salario Mínimo según enmendada por, entre otras, la Ley Núm. 105, <u>supra</u>.

proyecto de ley, con excepción de los de presupuesto general, que contenga más de un asunto, el cual deberá ser claramente expresado en su título, y toda aquella parte de una ley cuyo asunto no haya sido expresado en el título será nula..."[29]. A pesar de que la mayoría expone correctamente la doctrina interpretativa de esta disposición constitucional, no concurrimos con la aplicación de la misma a la Ley Núm. 105, supra.

En cuanto a la aplicación del precepto constitucional a las leyes enmendatorias, como la del caso de autos, hemos resuelto que "la doctrina prevaleciente no requiere que en el título se expongan los cambios específicos que se intentan en virtud de la enmienda propuesta, siempre que la materia no sea remota o extraña a la de la ley original. De forma que cuando la ley básica comprende razonablemente la materia cubierta por la enmienda propuesta basta una referencia a la sección o artículo que se intenta enmendar. Sólo cualquier materia o asunto de carácter sustantivo que no sea germano con la sección o artículo especificado transgredirá la norma constitucional." (Enfasis suplido y citas omitidas.) *Cervecería Corona, Inc. v. J.S.M.*, 98 D.P.R. 801, 812 (1970).

Según se desprende de las expresiones transcritas, no es necesario exponer en el título de una ley enmendatoria los cambios específicos que se proponen en virtud de la enmienda. Sin embargo, si la materia que se intenta introducir a la ley original es remota o extraña a ésta, o a la sección o artículo de la ley que se enmienda, sí deben exponerse en el título de la ley enmendatoria los cambios que se hacen a la ley original.

La opinión mayoritaria confunde ambos requisitos, analizando el asunto como si solamente existiere uno. Ejemplo de ello es el análisis realizado por la mayoría al examinar lo resuelto por este Tribunal en *Cervecería Corona, Inc. v. J.S.M.*, supra. Aducen que "[e]n esa ocasión sostuvimos la validez de la ley enmendatoria y, por ende, la actuación de la Junta, ya que la enmienda se refería a materias germanas, sugeridas por

---

[29]1 L.P.R.A. Art. III, Sec. 17.

y suplementarias de las distintas secciones enmendadas."[30] (Citas omitidas). Olvidan el hecho de que también analizamos si el asunto introducido por la enmienda a la ley original era o no "germano con la legislación básica".[31]

Esta postura de requerir que la materia introducida por las enmiendas sea germana tanto al artículo o sección enmendada como a la ley original es, no sólo perfectamente armonizable con los propósitos del Art. III, Sec. 17 de la Constitución, sino el único instrumento viable para garantizar que se cumplan dichos propósitos. Si la Legislatura se propusiera enmendar el Artículo 87 del Código Penal[32], el cual tipifica el delito de homicidio involuntario, mediante una ley titulada "Para enmendar la Sección 1 de la Ley Núm. 101 del 4 de julio de 1980, Artículo 87 del Código Penal", estableciendo como delito el robo de relojes, no cabe duda que la materia enmendatoria es germana a la ley original, el Código Penal. Sin embargo, se violaría el precepto constitucional en tanto en cuanto la enmienda no es germana al artículo enmendado y se incumple con el segundo requisito. El título de la ley enmendatoria no daría aviso razonable del cambio en la ley original. Del mismo modo infringiría la disposición constitucional una ley que enmiende un artículo del Código Penal que penalice a los negocios que operen los domingos a los efectos de concederle a los empleados un día de descanso por cada seis (6) días trabajados. *Laboy v. Corp. Azucarera Saurí & Subirá*, 65 D.P.R. 422 (1945). Ello es así porque se estaría introduciendo a una ley criminal asuntos no germanos a ella (de naturaleza civil), sin dar debido aviso de ello en el título de la ley enmendatoria. Ello es así aunque la enmienda guarda relación con el asunto cubierto por el artículo enmendado.

---

[30]Op. Mayoritaria, pág. 21.

[31]*Cervecería Corona, Inc. v. J.S.M.*, supra.

[32]33 L.P.R.A. sec. 4005

El cumplimiento del segundo requisito, el cual prohibe que la ley enmendatoria introduzca materia no germana a la ley original, debe exigirse con mayor rigurosidad que el primero, el cual requiere que el título de la ley enmendatoria dé aviso de la materia introducida en la ley original sólo si la misma no es germana al artículo o sección enmendada. Ello es consecuencia de la disposición expresa a esos efectos en el Art. III, Sección 17 de la Constitución, el cual establece que "...Ningún proyecto de ley será enmendado de manera que cambie su propósito original o incorpore materias extrañas al mismo. Al enmendar cualquier artículo o sección de una ley, dicho artículo o sección será promulgado en su totalidad tal como haya quedado enmendado..."

Aunque nada encontramos en el Diario de Sesiones de la Asamblea Constituyente que nos ilustre sobre el propósito perseguido por el transcrito precepto constitucional, encontramos que asuntos relacionados fueron cubiertos por la Ley Orgánica Jones de 1917 donde se establecía que:

> "Ninguna ley será restablecida o enmendada, ni se dará mayor alcance a sus disposiciones, ni se conferirán las facultades en ellas contenidas, haciendo referencia a su título solamente, sino que toda la parte de ella que sea restablecida, enmendada, extendida o conferida será decretada nuevamente y publicada en su totalidad".[33]

Del mismo Artículo del Acta Jones proviene, como copia literal, la parte de la Sección 17 del Artículo III de nuestra Constitución referente a los requisitos aplicables a los títulos de las leyes. Puede observarse, sin embargo, que nuestra Asamblea Constituyente expandió las exigencias referentes a las leyes enmendatorias al prohibir expresamente que mediante ellas se cambie el propósito de la ley original o se incorpore materias extrañas a ella.

Es evidente pues, que al analizar si una ley enmendatoria infringe el Art. III, Sec. 17 de nuestra Constitución, debemos examinar la

---

[33]Ley Orgánica Jones de 1917, 1 L.P.R.A. sec. 34, párrafo 8.

relación de la materia introducida por dicha ley con los propósitos de la ley enmendada y con las normas contenidas en los artículos o secciones enmendadas.

El título de la ley enmendatoria en cuestión[34] expone que se aprobó la misma "[p]ara enmendar los incisos (a) de las Secciones 16 y 24 de la Ley Núm. 96 de 26 de junio de 1956, según enmendada (Ley de Salario Mínimo de Puerto Rico)." Dicho título no da aviso alguno del contenido de las enmiendas efectuadas a la Ley de Salario Mínimo, supra. Esto, sin embargo, no evidencia de por sí una infracción a la Sec. 17 del Art. III de nuestra Constitución. Hemos visto que dicho título sería suficiente aviso si la materia introducida por las enmiendas a la ley original fuese germana al propósito de ésta y al asunto contenido en las secciones o artículos enmendados.

El inciso (a) de la sección 21, antes sección 24, de la Ley de Salario Mínimo, supra, dispone que todo patrono que discrimine contra un empleado suyo para evadir el cumplimiento de dicha ley o por ese empleado haberse querellado o haber testificado o vaya a hacerlo en algún procedimiento que se lleve o se haya llevado a cabo en relación con la aplicación de dicha ley incurre en delito. Posteriormente se imponen sanciones civiles a favor del empleado por dicha actuación discriminatoria. La Ley Núm. 105, supra, adicionó a dicha sección las palabras "o de cualquier otra ley laboral o reglamento promulgado al amparo de la misma" luego de hacerse referencia a `dicha ley´.

Aunque entendemos que la materia introducida por la referida enmienda es germana al asunto cubierto por la sección 21, no es así al examinar la relación de la materia introducida por la enmienda con los propósitos de la ley original.

La mayoría señala que "[e]l propósito de la ley original... fue propiciar que los empleados prestaran testimonio en los distintos procedimientos relativos a la fijación de salarios mínimos y al

---

[34]Ley Núm. 105, supra.

establecimiento de condiciones de trabajo en las distintas industrias y actividades."[35] No podemos concurrir.  La Ley Núm. 96 del 26 de junio de 1956, supra, fue aprobada "[p]ara fijar ciertos salarios mínimos; establecer la Junta de Salario Mínimo de Puerto Rico, determinar sus poderes y facultarla para fijar y revisar salarios mínimos; fijar penalidades por las violaciones de esta ley; establecer el término de prescripción para acciones en reclamación de salarios; y derogar la Ley Núm. 45 de 9 de junio de 1919."[36]  (Enfasis nuestro).

Si bien es cierto que hemos dicho que solamente en un caso claro y terminante se justifica anular una ley o parte de ella por adolecer su título de deficiencias[37], no podemos olvidar los principios que inspiraron la inclusión en nuestra Constitución de los preceptos anteriormente enunciados.

En cuanto a los requerimientos de los títulos de las leyes, hemos dicho que su propósito es "impedir la inclusión en la ley de materia incongruente y extraña, y a la vez poner en guardia contra la inadvertencia, la ocultación y el fraude en la legislación,... evitar la práctica, corriente en todas las legislaturas donde no existe tal disposición, de incluir en la ley materias incongruentes que no tienen relación alguna entre sí o con el sujeto especificado en el título, a virtud de lo cual se aprueban medidas sin atraer atención que, si hubieran sido vistas, hubieran sido impugnadas y derrotadas.  Así parece evitar sorpresas en la legislación" (Citas omitidas.)  *Rivera v. Corte*, supra, 539.  En nuestro ordenamiento jurídico se presume que todos conocemos las leyes, siendo su desconocimiento una pobre excusa para su incumplimiento.  Si le exigimos su conocimiento, se le tiene que proveer una oportunidad razonable al ciudadano promedio de conocer la ley.  Uno de los medios para así garantizarlo es asegurándonos que los títulos de

---

[35]Op. Mayoritaria, pág. 24.

[36]Título de la Ley Núm. 96, supra.

[37]*Cervecería Corona, Inc. v. J.S.M.*, supra; *Sunland Biscuit Co. v. Junta Salario Mínimo*, 68 D.P.R. 371, 381 (1948); *Rivera v. Corte*, 62

las leyes den un propio aviso de su contenido, especialmente si la ley crea nuevos delitos o penalidades.

Para determinar si la relación entre la enmienda a la sección 21 y los propósitos de la Ley de Salario Mínimo, _supra_, infringe la Constitución, debemos examinar si la enmienda introdujo materia germana a la ley original. "`Germane' is defined as:  in close relationship, appropriate, relevant, or pertinent to the general subject."[38]  Vistos los propósitos perseguidos por la enmienda a la sección 21 de la Ley de Salario Mínimo, _supra_, forzoso es concluir que no son relevantes ni pertinentes a los fines perseguidos por la ley original.  No hay relación entre querer establecer salarios mínimos de la manera más razonable posible y velar por el cumplimiento de los mismos, con penalizar a patronos que discriminen contra un empleado por haber testificado en un procedimiento de despido por razón de edad.  Aunque ciertamente éste es un fin sumamente admirable, la Ley de Salario Mínimo, _supra_, no es el lugar apropiado, de acuerdo a la Constitución, para perseguirlo e implementarlo.  Se estarían incorporando materias extrañas al estatuto original.

Aunque del historial legislativo de la Ley Núm. 105, _supra_, no se desprende mayor discusión sobre las enmiendas propuestas por dicha ley, es preocupante que en el informe presentado al respecto por las Comisiones de Trabajo y de Agricultura[39] tan sólo se discuten los efectos

---

D.P.R. 513 (1943).

[38]Sutherland Stat. Const. Sec. 17.03; 5th Ed., pág. 11.

[39]"A la Cámara de Representantes:

continúa...

...continuación

Las Comisiones de Trabajo y de Agricultura, previo estudio y consideración del P. de la C. 1108 propone a la Cámara que sea aprobado sin enmiendas.

**EXPOSICIÓN**

El principal propósito de esta medida legislativa es reestablecer la autoridad que tenían los comités industriales de acuerdo con la Ley de Salario Mínimo antes de la misma ser enmendada en 1956.

y el fin perseguido por la enmienda a la sección 16 de la Ley de Salario Mínimo, _supra_.  Aunque nos es imposible verificar si la enmienda a la sección 21 fue aprobada inadvertidamente o no, es precisamente dicha duda la que desea erradicar la Constitución.  El título no advierte sobre los cambios efectuados a la legislación original, aún cuando la materia introducida por la enmienda no es germana a ella, y los efectos de la enmienda a la sección 21 no fueron discutidos ni en parte por la Legislatura.

II

Luego de determinar la Constitucionalidad de la Ley Núm. 105, _supra_, la mayoría concluye que la codemandante, Mercado de Dorante, puede reclamar compensación bajo el Artículo 1802 del Código Civil, _supra_. Disentimos.

Utiliza la mayoría como precedente lo resuelto en _Santini Rivera v. Serv. Air Inc._, Op. de 12 de septiembre de 1994, 137 D.P.R. _____ (1994),

---

Después del 1956 y hasta el presente, los comités industriales por autoridad conferida por la Asamblea Legislativa, han venido decretando salarios por unidades de trabajo en la recolección del fruto en la fase agrícola de la industria cafetalera y en el cosido de hojas de la industria tabacalera.  Fuera de estas dos actividades la Junta de Salario Mínimo carece de facultad para fijar salarios por unidad.

Al devolverle la facultad de que anteriormente disfrutaba la Junta de Salario Mínimo para fijar salarios por unidad en aquellas industrias que de acuerdo con las condiciones de trabajo y de producción así se justifique, se establece en este proyecto que tal autoridad se ejercerá para fijar salarios por unidad en vez de por hora o alternativamente, en aquellos casos en que lo considere aconsejable la Junta.

Respetuosamente sometido,

Justo Sánchez Pérez,
Secretario, Comisión de Trabajo.

Armando Sánchez Martínez,
Presidente, Comisión de Trabajo.

Osvaldo Torres Gómez,
Secretario, Comisión de Agricultura.

Pablo Morales Otero,

94 J.T.S. 121.

El Código Civil, en su Artículo 12[40], dispone que "[e]n las materias que se rijan por leyes especiales, la deficiencia de éstas se suplirá por las disposiciones de este título." La doctrina española ha señalado algunos límites al uso supletorio del Código Civil. No debe acudirse al Código Civil cuando en el cuerpo legal especial el caso es objeto de regulación con normas adecuadas. Sentencias del Tribunal Supremo de España de 28 de diciembre de 1906 y de 6 de diciembre de 1963. Dicho Artículo 12, supra, "consagra la supletoriedad del Código Civil en las materias regidas por otras leyes, fórmula amplia que no hay razón para circunscribir al ámbito de las leyes civiles, ni obliga a todo trance a aplicarla cuando las instituciones o materias, por sus especiales características o regulación, las repela." Ministerio de Justicia, Comentario del Código Civil, Madrid, 1991, Tomo 1, pág. 21.

La Ley de Salario Mínimo, supra, no contiene disposición alguna referente a compensación a los parientes del empleado discriminado. Ello podría considerarse una omisión o deficiencia de la ley especial. De acuerdo a la doctrina, podríamos acudir al Código Civil en busca de la norma que falta en la ley especial. Sin embargo, existe un obstáculo a este uso supletorio del Artículo 1802, supra, la falta de compatibilidad entre ambos, como bien señalara la Juez Asociada señora Naveira de Rodón en su opinión concurrente y disidente en *Santini Rivera v. Serv. Air Inc.,* supra, págs. 193-194.

El remedio provisto por la Ley de Salario Mínimo es claro en que la protección que provee es para el empleado. La inclusión del Artículo 1802, supra, en el esquema de la Ley de Salario Mínimo, supra, es contraria al propósito de ésta y tendría el efecto de desvirtuarla. Ello ocasiona que esta decisión se constituya en un elemento demoledor del cuidadoso entramado legislativo de la Ley de Salario Mínimo, como ocurrió con la interpretación de la Ley Núm. 100 de 30 de junio de 1959, 29

Presidente Interino Comisión de Agricultura."

L.P.R.A. sec. 146 et seq., que hicimos en *Santini Rivera v. Serv. Air Inc.*, supra. "Consideramos que los tribunales no son el foro apropiado para, mediante fíat interpretativo, ampliar, de manera considerable, la responsabilidad de los patronos con relación a las leyes laborales, desvirtuando de esta forma los esquemas remediales establecidos por la Legislatura."[41]

Por las razones anteriormente expuestas, disentimos.

BALTASAR CORRADA DEL RIO
Juez Asociado

---

[40]31 L.P.R.A. sec. 12.
[41]Opinión Concurrente y Disidente de la Juez Asociada señora Naveira de Rodón, *Santini Rivera v. Serv. Air Inc.*, supra, pág. 194.